Carl POPPA, Claimant-Respondent,

v.

Loyce POPPA, Executrix, Estate of Herbert W. Poppa, Deceased, Defendant-Appellant.

No. 23576.

Kansas City Court of Appeals.

Missouri.

Dec. 3, 1962.

Walter L. Mulvania, Rockport, for appellant.

Bernard W. Gorman, Tarkio, for respondent.

SPERRY, Commissioner.

This case originated in probate court by the filing of a claim by Carl Poppa against the estate of Herbert Poppa, deceased. The claim was based on services rendered by claimant in picking and shelling 180 acres of corn for deceased, in 1959. The probate court entered judgment for plaintiff in the amount of $1350, on October 24, 1960. No order granting the appeal was made until May 4, 1961. On trial to the court without a jury, judgment was entered for plaintiff in the sum of $1350, the same amount allowed by the probate court. The executrix (and sole beneficiary) of deceased's estate appeals.

Plaintiff filed a motion in circuit court to dismiss the appeal for lack of jurisdiction, because it was not taken within 30 days of the rendition of the decision appealed from, under the provisions of Sec. 472.180 RSMo 1959, V.A.M.S. The motion was overruled and the question of jurisdiction is urged here. The record shows that the decision in probate court was rendered on October 24, 1960, and that defendant, on October 25, 1960, filed "notice of appeal", accompanied by an affidavit in form prescribed by Sec. 472.210 RSMo 1959. On May 4, 1961, the probate court entered an order granting an appeal to the circuit court and ordering that all papers pertaining to the matter be transferred to said court. The transcript was filed in circuit court on that date.

No provision appears in the probate code pertaining to a court order granting an ap-

peal. Under the provisions of the law, as it existed prior to enactment of the new code, an appeal was considered to have been "taken", completed, when the statutory affidavit was filed in probate court. In Lewellyn v. Lewellyn, 87 Mo.App. 9, 14, the court held: "The filing of the affidavit for the appeal ousted the probate court of jurisdiction of the cause and transferred it to the circuit court". To the same effect is Bensley v. Haeberle, 20 Mo.App. 648, 651–652.

The new statute, Sec. 472.240, is slightly different from the old, which provided that the probate clerk should certify the transcript to the circuit court. In the new the following has been added: "* * * as ordered in writing by the appellant or the respondent". Those words do not have the effect of changing the time when jurisdiction of the circuit court attaches. The legislature, when the statute was enacted, must have had in mind the existing law, as heretofore stated. The above wording was added, probably, in order to obviate the necessity of certifying all of the records when only certain were needed. The words are directory and are obviously not intended to effect such a change in the law as to divest the circuit court of jurisdiction, which it had already obtained by the filing of the affidavit. A reading of the remainder of the section would seem to confirm this view. Furthermore, it does not appear that plaintiff has been prejudiced in any manner because the transcript was not certified to the circuit court sooner. *Plaintiff,* at any time, as provided by statute, could have directed the clerk to certify the transcript. No doubt he would have done so had he believed that he was prejudiced by delay. The motion was properly overruled.

Plaintiff's testimony was the only evidence offered in circuit court. He stated that, in 1959, and for many years prior thereto, he and his deceased brother, Herbert, had a custom whereby they exchanged farm work and implements; that they kept no records of such exchanges; that, at any time plaintiff needed deceased's services, witness knew that they would be available even without asking; that, in 1959, deceased requested plaintiff to pick and shell about 180 acres (or more) of corn; that deceased furnished two barrels of gasoline and plaintiff furnished the remainder that was used in the operation; that plaintiff used his own equipment; that the customary and "going" charge for such services in that community, on a per acre and per bushel basis, was $1350; that, when he did the work, he had no thought or expectation of "charging" deceased for such services; that he did not consider his brother obligated to him in any way, and did not expect to or think of billing him therefor in dollars and cents.

However, he stated that he did, at that time, expect deceased to work for him at some future time when his services might be needed; that, on what should have been the day when the work would have been completed, deceased was injured and the work was finished on the next day; that his brother was killed and that, knowing that he would receive no services in return for his work and the use of his equipment, he decided to file a demand against the estate for his services.

Defendant contends that the judgment cannot stand because the evidence clearly demonstrated that plaintiff had no intention to make a charge against deceased therefor at the time the services were rendered. It is not claimed that the parties occupied a family relationship, although they were brothers. It is not claimed that they lived in the same household or that they worked together in a joint enterprise. Each had his own separate farming operation. See 98 C.J.S. Work and Labor § 16, page 740. Therefore, if plaintiff had rendered the services here claimed *without any request* from his brother, the law would imply a promise, agreement, contract, or obligation, or an intention on the part of the recipient to pay therefor. 98 C.J.S. Work and Labor § 10, page 728. How-

ever, in this case, the uncontroverted evidence is that deceased requested plaintiff to perform the services. If the evidence had stopped at that point the judgment should stand unchallenged. Kolb v. Howard Corporation, 219 S.W.2d (Mo.App.) 856, 858.

 But plaintiff went further and stated that, at the time he performed the services, he had no intention of making a charge therefor, that he did not consider that deceased was obligated to plaintiff. Defendant says that this is proof of the fact that, because of the relationship between the parties, neither expected that there should be compensation paid or received for the services, citing and relying on 98 C.J.S. Work and Labor § 14, page 738. A case in *quantum meruit* is made if the evidence discloses that the one who rendered the services did so under circumstances warranting a proper inference that he expected the recipient of the services to pay for them, and that the latter, in accepting the benefit of the services, was, or should have been aware that they were being performed with that expectation. Tomasso v. Sorbets, 147 S.W.2d (Mo.App.) 151, 152.

In answer to a question on cross examination as to whether he intended to make a charge either in money or services, plaintiff said, "Oh yes. * * *" He further stated "well we were just more or less trading work. He had equipment that I used and would have used if he had lived." He stated that, because of Herbert's death and inability to work for him in return for these services, he was asking for payment on the basis of the "going" price for such services.

At the conclusion of the evidence the court said: "It may not be too clear from the evidence, but it's clear to me that these brothers were exchanging work and when he rendered the services he knew and felt that if his brother lived he would pay him back whatever he was ahead".

The evidence was heard by the court without the aid of a jury. We cannot say that the judgment is clearly erroneous. There is sufficient evidence to support it.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. All concur.