**In the Matter of the ESTATE of Della ROGERS, a/k/a Della Courier, Deceased, Respondent,**

v.

**Roy J. COURIER, Administrator, Estate of Roy G. Courier, Deceased, Appellant.**

**No. 52729.**

Supreme Court of Missouri, Division No. 2.

June 10, 1968.

Motion for Rehearing or to Transfer to Court En Banc Denied July 8, 1968.

**260**

———◆———

Arthur J. Kase, Richard A. Rubins, Rubins, Kase & Rubins, Kansas City, for respondent.

Harvey Burrus, Rufus Burrus, Independence, for appellant.

LACKLAND H. BLOOM, Special Judge.

This action originated in the Probate Court of Jackson County. Pauline Scott, Administratrix De Bonis Non of the Estate of Della Courier, deceased, a/k/a Della Rogers,[1] instituted this proceeding by filing an "Affidavit to Discover Concealed or Embezzled Assets" against Roy G. Courier, now deceased.[2] Issue was joined in the Probate Court on interrogatories to Roy G. Courier and answers thereto. A separate petition was filed by Roy G. Courier for an order adjudging him to be the owner of certain United States Savings Bonds held by the Administratrix

d/b/n. The trial in the Probate Court resulted in a decree in favor of Roy G. Courier adjudging him to be the owner of $10,000.00 cash on deposit in the registry of the court and six $1,000.00 U. S. Bonds in the possession of the Administratrix d/b/n.

On appeal to the Circuit Court of Jackson County and following a trial de novo before the Court without a jury judgment was entered in favor of Pauline Scott, Administratrix d/b/n, and against Roy G. Courier with respect to both the cash deposit in dispute and the six U. S. Bonds. The Court found both the cash and bonds to be assets of the Estate of Della Rogers, Deceased. From the judgment of the Circuit Court appellant has perfected this appeal. We have jurisdiction because the amount in dispute exceeds $15,000.00.

The facts in this case recall to mind Sir Walter Scott's admonition:

"O, what a tangled web we weave, when first we practice to deceive!"

Roy G. Courier and Della Rogers lived together, purportedly as husband and wife, beginning in March 1934 until shortly before Della's death on October 10, 1950. In March 1934 Della was married to Joseph Archer Rogers and on January 31, 1935, made application to the Probate Court and was appointed guardian and curatrix of her husband's person and estate by reason of the fact he was declared to be insane. One of the appraisers to the inventory was Roy G. Courier who filed his sworn affidavit that he was not interested in nor kin to said guardian, Della Rogers.[3] Joseph Archer Rogers died November 11, 1936.

1. Pauline Scott, Administratrix De Bonis Non, etc. is actually the respondent on this appeal and will be referred to herein as respondent.

2. Roy G. Courier died June 1, 1967, pending the appeal herein and Roy J. Courier, Administrator of his estate, has been substituted as appellant.

3. Roy G. Courier offered into evidence a purported marriage certificate between him and Della Rogers dated March 8, 1934, which the Court refused to admit into evidence.

Della and Roy lived together in a home in Independence, Missouri, in which Della lived prior to the death of her husband, Joseph Rogers. Della had three boys and a girl by her marriage to Rogers who lived with Della and Roy until they matured and left home. A son was also born to Della and Roy and was fourteen years of age at the time of his mother's death in 1950.

Della took sick in March 1950 and in July of that year was taken by one of her daughters, Dorothy Beamer Blevins, to the latter's home where she remained until her death on October 10, 1950. Dorothy Beamer Blevins, on instruction of her mother, on March 7, 1950, deposited $3,000.00 and on March 8, 1950, $7,000.00, which she testified she received from her mother, in a personal checking account then existing in the name of Della Rogers. The account prior to the deposits had a balance of $220.12. She testified that with the balance of money which her mother had given her to deposit she purchased $4,500.00 U. S. "E" Bonds of a face value of $6,000.00 in the name of Della Rogers.

On the death of Della, Roy G. Courier was appointed administrator of her estate. He provided the Probate Court with incomplete addresses of the heirs of Della other than his son Roy. On January 10, 1955, under authority of his office as administrator of Della's estate he withdrew from her account in the Bank of Independence all of the money then on deposit in said account, being $10,220.12. The check in this sum payable to the Della Rogers Estate was deposited in the estate account. On the same date, January 10, 1955, Roy G. Courier as administrator of the Estate of Della Rogers drew a check on the estate account in the sum of $10,220.12 and purchased a cashier's check payable to himself in the same amount which was endorsed by him individually. On the same day he filed a final settlement in the Probate Court praying to be discharged as administrator in which he swore that the settlement "contains a just and true account of all

monies and effects received and paid out by him * * *" as administrator. Neither the receipt nor disposition of the $10,220.12 was disclosed. No notice of final settlement was published. The settlement was approved January 19, 1955, and Roy G. Courier was discharged as administrator.

On August 20, 1955, the Probate Court upon application of Dorothy Beamer Blevins, daughter of Della Rogers, and upon hearing, appointed Pauline Scott as Administratrix De Bonis Non, and, as previously indicated, this appeal arises out of the petition to discover assets filed by her.

Appellant offered evidence to show that Della Rogers was not employed after her purported marriage to Roy G. Courier. On the other hand Roy was employed in various odd jobs, did hauling, and in later years apparently worked steadily as a railroad fireman and engineer. There was testimony by Evelyn Curran that on various occasions Della had inferred in the presence of others that Roy had money of his own. On one occasion involving a sale of property of her mother and brother she quoted Della as saying, "Well, Roy, I don't know what you're worrying about * * * you have money enough to buy them all out." In June 1945 Della, referring to the use by them of a truck for family transportation, is reported to have stated, "Well, we can't buy a car and a truck both, he's going to save his money to buy a place when we retire." The witness quoted her brother Roy as saying, in Della's presence, on one occasion when he was asked to pay Five Dollars, being his share of flowers when his brother died, "Della has my money and she will take care of my part." Della told the witness they went to the bank and cashed Roy's checks and "that she always gave him the change from the checks * * *, and I kept the money."

Testimony of Ralph N. Bowser, who had died at the time of the trial, offered at a

prior trial,[4] was admitted into evidence. Mr. Bowser was a teller at the First National Bank of Kansas City. He knew Della and Roy and cashed Roy's payroll checks for him over a period of 18 or 20 years. There were times when he would not see them for six weeks or two months and they would then bring in five or six railroad checks to be cashed. He would ask Roy what kind of money he wanted and his wife would answer, "Just give the largest bills you have." She would take the bills and give Roy the change. Roy would say, "That is all I get out of it. She takes care of the money." She would say, "I take care of the money and this is what he gets." She would shove the change over to him.

The prior testimony of one Albert E. Snyder, who was also dead at the time of this trial, was offered and received into evidence. He was a neighbor of Della and Roy in 1939. He worked with Roy on odd jobs, hauling trash, cleaning "and this and that." He knew Della but did not know her to work away from home at that time. The witness and his wife who had a new truck saw Roy and Della on the square in Independence in 1949. They were talking about the truck and Della stated, "Well, we could have got a new truck, Roy had the money to pay for it. We didn't, we want to save our money, and we got a second hand truck."

Roy J. Courier, the son of Della and Roy G. Courier, testified. He was born June 22, 1934. He recalls that the household was made up of his mother, father, step-brother Henry Rogers, and himself. At times his step-sisters were living there with their husbands. He was fourteen years of age when his mother died.[5] His father worked for the railroad most of the time and also did hauling with a pickup truck. During the war years his father al-ways gave his mother his pay check "and she would cash it and use it for groceries." In 1945 he remembers seeing "a large amount of Fifty Dollar bills in her purse." He saw his first One Hundred Dollar bill in her purse. The household did not have much in the way of furnishings. There was nothing extravagant brought in.

Roy G. Courier was called as a witness in his own behalf. Objection to his competency was sustained under the Dead Man's Statute.

■ We review this jury waived case de novo on both the facts and the law reaching our own conclusions as to the facts, giving due deference to the findings of the trial judge who saw the witnesses and heard their testimony. Rule 73.01, V.A.M.R.; Schlanger v. Simon, Mo., 339 S.W.2d 825, 828.

■ Since, as indicated, we must review the evidence presented in the trial court de novo we consider first appellant's assignment that the trial court erred in holding Roy G. Courier to be an incompetent witness in his own behalf by reason of Section 491.010, V.A.M.S., otherwise known as the Dead Man's Statute. Appellant, while apparently not questioning the incompetency, takes the position that respondent waived the same by propounding forty-four interrogatories to Roy G. Courier in the Probate Court. We have held generally that the serving of interrogatories and obtaining answers thereto constitutes a waiver of incompetency under the Dead Man's Statute. Watkins v. Watkins, Mo., 397 S.W.2d 603, 611. Such rule does not apply, however, to a case such as this one initiated in the Probate Court for the purpose of a discovery of assets under Sections 473.340 through 473.350, RSMo 1959, V.A.M.S. Under these statutes the proceeding is commenced by the filing of an

4. This controversy was the subject of a prior appeal to this court. Courier v. Scott, Administratrix d/b/n of the Estate of Della Courier, Deceased, et al., Mo., 336 S.W.2d 375.

5. If the date of his birth is correct he would be 16 in October 1950 when his mother died.

affidavit and the issuance of a citation to the defendant. The defendant either admits or denies the allegations of the affidavit. If denied the petitioner may subject the defendant to an oral examination. Interrogatories are then filed by petitioner and an answer is filed by defendant. The interrogatories and answers thereto constitute the pleadings and frame the issues to be tried. In re Decker's Estate, 348 Mo. 32, 152 S.W.2d 104; In re Baker's Estate, Mo.App., 359 S.W.2d 238, 242; Dusenbery's Estate v. Stamm, Mo.App., 255 S.W.2d 57, 59. Since the interrogatories and the answers are necessary to formulate the issues to be tried, we have held that they do not constittue a waiver of incompetency under the Dead Man's Statute. Tygard v. Falor, 163 Mo. 234, 63 S.W. 672; Carmody v. Carmody, 266 Mo. 556, 181 S. W. 1148. We stated in Tygard v. Falor, supra, 63 S.W. l. c. 674: "And as plaintiff, as a necessary step, had to file interrogatories to defendant in order to institute proceedings against him, such filing could not be used as a basis and means of waiving defendant's incompetency as a witness. Waiver can alone arise as the result of a voluntary act, and not as the result of one which the law commands to be done as a means of procedure in court."

■ Appellant urges that the rule applied in the Tygard case is not applicable to the facts in this case because the interrogatories submitted were much broader than was necessary to join the issues involved in the discovery proceedings. He points out that in Tygard the Court was concerned with only three interrogatories while forty-four were propounded in this case. Appellant states that only one interrogatory was necessary to make up the issues in this case. "Did you come into possession of any money that had been on deposit in the name of Della Rogers, and if so what were the amounts and the dates of the possession?" We fail to perceive anything in either the Tygard or the Carmody cases which indicates that the question of whether or not the incompetency of a witness in a discovery of assets proceeding turns on the number or extent of the interrogatories propounded. It is not necessary to set forth and review the various interrogatories propounded by respondent. We have examined each of them and conclude that they were relevant and necessary to frame the issues as to whether or not Roy G. Courier, while serving as administrator of Della Rogers' estate, learned of certain bank deposits and government bonds standing in the name of the decedent, whether the deposits had been paid to him, whether certain bonds should have been brought into the estate by him in his capacity as administrator, and whether, at the time he filed a final settlement and sought discharge, he was concealing cash or the existence of other assets from the Probate Court. Roy G. Courier was incompetent to testify under the statute as to facts occurring prior to his appointment as administrator, and the trial court did not err in excluding his testimony.

■ At the trial Roy G. Courier was shown Exhibit No. 10 and asked, "In whose handwriting does this appear?" Objection was made, as before, on the grounds of the witness's incompetency under the Dead Man's Statute. Appellant contended in the trial court and contends here that identification of handwriting is an exception under the statute and that the witness was competent to testify as to Exhibit 10 since it was equivalent to "books and records" not subject to the Dead Man's Statute. One of the exceptions set forth in Section 491.010, V.A.M.S., is set forth in the following proviso: " * * * provided further, that in actions for the recovery of any sum or balance due on account, and when the matter at issue and on trial is proper matter of book account, the party living may be a witness in his own favor so far as to prove in whose handwriting his charges are, and when made, and no farther."

A witness, even though disqualified under Section 491.010, V.A.M.S., may never-

theless testify as to a decedent's handwriting. Reidinger et al. v. Adams et al., Mo., 266 S.W.2d 610, 613; Gantz v. American National Bank, Mo.App., 420 S.W.2d 8, 11. Respondent apparently recognizing this rule, objected in the trial court on the further ground that Exhibit 10 was not material or relevant in that the information contained thereon, unexplained, was in effect "meaningless" requiring interpretation based on mere "speculation and guesswork." We agree.

Our examination of Exhibit 10 shows it to be two pieces of torn manila gummed back paper wrapping tape 12½″ long and 2″ wide, stuck together at the top on which appear penciled figures as follows:

"45–50
31–100
13–20
$5610
July 14–44
31–100
52–50
5700
Oct 17–44
6–100
Nov 9
50 Xout
5700
600
50
$63–50
July 1–45
40–$50
47–$100
on hand
July 14–44
5610
Oct 17–44
5700
Nov 9–44
$6350–
July 1–45
$6700
now.
at present.
47–$100
40–$50"

We set out the exhibit in full because appellant would have us conclude from this exhibit many things, among which are that the same being in decedent's handwriting and found among her possessions after her death constitutes some sort of admission against interest, constitutes "books and records that she kept" showing the "origin of the funds and of her holding the same in large denominations, and as having come from the cashier's window of the First National Bank" where Roy's checks were cashed. Appellant argues that the exhibit is a record of the number of the various denominations and the aggregate of the amounts "and that the currency was being held for Roy G. Courier." He urges that the exhibit represents cumulative evidence that the $14,500.00 now in dispute was the result of the accumulation of the savings from Roy G. Courier's wages entrusted to Della Rogers as a fiduciary.

Assuming the exhibit to be in decedent's handwriting, standing alone (or in conjunction with the other competent evidence before the court) it is of little or no probative value as to either the source or ownership of the funds and bonds in dispute. It was properly excluded from evidence by the trial court. To do otherwise would be to open the door to gross speculation and guesswork.

We now turn to appellant's contention that the trial court erred in finding that Roy G. Courier had no right, title or interest in the cash deposit and bonds which are the subject matter of this suit.

Appellant first argues that there was, under the evidence, a presumption of ownership in Courier because the evidence shows he produced the funds and that since he and Della Courier were living together as husband and wife the possession of Della Courier was in effect the possession of Roy G. Courier.

It is sufficient answer to appellant's position to point out that the trial court properly found under the evidence that Roy G.

Courier and Della Rogers were never husband and wife. At the time they commenced living together in March of 1934 she was still legally married to Joseph Rogers who did not die until November 11, 1936. We further note that the purported marriage certificate between Roy and Della, which the Court excluded from evidence, was dated March 8, 1934, while Joseph Rogers was still alive. In fact Della made application to the Probate Court and was appointed as wife of Joseph Rogers guardian of his person and curatrix of his estate on January 31, 1935. Roy G. Courier was an appraiser to the inventory. Furthermore, the evidence shows that from July of 1950 until her death on October 10, 1950, Della Rogers was not living with Roy G. Courier but was living with her daughter. Appellant cites McClain v. Abshire, 63 Mo.App. 333, and McKenzie Carpet Co. v. Leffler, 192 Mo.App. 608, 184 S.W. 905, in support of the proposition that a presumption of ownership lies in Roy G. Courier's favor. For the reasons indicated we believe these authorities fail to lend support to appellant under the circumstances of this case. In fact the court in McKenzie Carpet Co., supra, 1. c. 906, states: "But it is said that in the instance of a married woman on a contest between her and her husband, the presumption will be that the possession is in the husband. Burns v. Bangert, 16 Mo.App. 22, 35; McClain v. Abshire, 63 Mo.App. 333, 339. If we concede that to be true when the husband and wife are living together, when they have separated, though not divorced, the presumption in favor of the husband does not obtain, and the wife's possession will be presumed to be in her own right."

Respondent contends that the Married Woman's Act, Section 451.250 et seq., V. A.M.S., has abrogated the common law presumption even between husband and wife. In light of the evidence in this case that Della and Roy were not legally married we need not pass upon that contention.

Appellant urges that the trial court erred in not finding the ownership of the money on deposit and the money used to purchase the bonds to be in Roy G. Courier. In this regard appellant points to the testimony of Ralph N. Bowser, teller at the First National Bank of Kansas City, to the effect that he cashed Roy's payroll checks over a period of eighteen to twenty years. Della would be there and would ask for the "largest bills you have." She would take the bills and give Roy the change. Della is reported to have said, "I take care of the money and this is what he gets," referring to the change. Appellant urges this testimony coupled with Della's statement to others on occasions indicates the money to have belonged to Roy. She is reported to have said that they could get a new truck as "Roy had the money to pay for it." On another occasion she told Roy in the presence of others, "I don't know what you're worrying about * * * you have money enough to buy them all out." Roy is supposed to have said with respect to the payment of Five Dollars, being his share for the purchase of flowers when his brother died, "Della has my money and she will take care of my part." Appellant states that Della is not shown to have been employed during the time she was living with Roy, while on the other hand Roy worked at various odd jobs, doing hauling, and in later years as an extra man and finally as an engineer for a railroad. Evidence was offered that they lived frugally and that their house was not extravagantly furnished. Appellant "suggests" that when Della became ill in 1950 she had in her possession a large amount of money accumulated from Roy's earnings and that the deposit made in Della's bank account and the purchase of the bonds were "instigated" by her daughters. Appellant would have us declare the funds admittedly held exclusively by Della to be held in trust for Roy G. Courier.

It must be conceded that the only evidence on the issue indicates that the source of the bulk of the funds in dispute must have been derived from the efforts of Roy G. Courier. Except for the sum of $220.12 standing in Della's account at the time the

$10,000.00 deposit in dispute was made, there is no evidence that Della had any substantial earnings of her own or otherwise acquired funds other than from the earnings of Roy. However, conceding the possible source of the funds, we cannot say the trial court was in error in holding that on the death of Della Roy G. Courier had no title to the funds. From March 1950 to the date of Della's death in October Roy G. Courier made no effort to locate or obtain any funds allegedly due him, although Della was no longer living with him. Only after her death did he surreptitiously seek out the funds. He obtained possession of them only under his authority as administrator of Della's estate. Without notice to any interested party, including the heirs of Della, he undertook to place the funds in his own personal account, close the estate, and seek his discharge without inventorying the funds or publishing notice of final settlement. This was clearly contrary to his obligations as administrator. We hold under the evidence that Courier's failure to lay any claim to the funds following his and Della's separation and while she had exclusive possession of them, and his efforts to conceal his conversion of the funds after obtaining them as administrator, constitutes strong evidence that he knew, whatever the source of the funds, that immediately prior to and at the date of Della's death they belonged to her. In view of the evidence establishing a clear violation of his trust as administrator, we hardly think his contention that the funds and bonds were held by Della in trust for him can be entertained let alone sustained. Hyde Park Amusement Co. v. Mogler, 358 Mo. 336, 214 S.W.2d 541, 544; In re Buder et al., 358 Mo. 796, 217 S.W.2d 563, 571; Gilmore v. Thomas, 252 Mo. 147, 158 S.W. 577. The judgment of the court below is affirmed.

FINCH, P. J., and DONNELLY, J., concur.

EAGER, J., not sitting.