Theresa BUCHWEISER, Appellant,

v.

ESTATE OF Edwin G. LABERER, Eileen C. Burgener, Administratrix, Respondent.

No. 66769.

Supreme Court of Missouri, En Banc.

Aug. 7, 1985.

Coggan R. Mills, Clayton, for appellant.

Alfred J. Rathert, Fenton, for respondent.

RENDLEN, Judge.

Theresa Buchweiser (hereinafter claimant) appeals from the denial of her four count claim against the estate of Edwin G. Laberer who died in January 1981, survived by four children. In February 1983, a handwritten instrument leaving the bulk of his estate to Theresa Buchweiser, his "long trusted friend," was rejected as a will for lack of proper attestation.

The following month claimant filed her claims against the estate. In Claim A, it was alleged that for twenty-seven years from May 1956 to January 1983, she continuously and regularly rendered personal services to decedent including cleaning his house, cooking meals, washing dishes, washing and mending his clothes, and maintaining his home as well as other services. That she was induced to perform these personal services in return for decedent's promise to leave "most of his estate" to her by will she prayed for the value of her services in the amount of $195,000. By Claim B sounding in quantum meruit claimant realleged performance of the personal services, claiming that she was entitled to the reasonable value thereof. In Claim C, claimant alleged that decedent "failed to leave a valid probatable will leaving her all of his estate to her [sic] as agreed on," and prayed judgment for all of

the assets owned by decedent at the time of his death less expenses of administration and debts. In Claim D, claimant alleged that certain items of personal property belonging to her were in the house owned by decedent at his death and requested their return.

The administratrix filed answer denying all allegations of the claims and additionally filed a claim for setoff and counterclaim, alleging that "decedent supplied monetary remuneration to claimant by purchasing food and household goods for her, by paying the expenses of vacation trips, by remodeling and refurbishing claimant's house." The administratrix further alleged that when decedent entered the hospital for his last illness, claimant obtained possession of certain property of decedent in the value of $7,500 and requested its return.

█ Timely appeal was perfected to the Court of Appeals Eastern District where the judgment of the trial court was reversed and the cause remanded for new trial. The principal reason for transfer here was to reexamine and clarify the law concerning "waiver" of the Dead Man's Statute[1] in cases such as that at bar. We review the cause as though on original appeal. Mo. Const. art. V, § 10; Rule 83.03.

From the record of the contested hearing, the evidence demonstrates that decedent and his wife were divorced in 1949. Sometime in the late 1950s, decedent, whose parents had been born in Germany, met the claimant, who was apparently a German immigrant. Decedent told several people that he wanted to marry claimant but she refused because she was a devout Catholic and he had been divorced. Though decedent and claimant maintained separate households, there was evidence that from 1963 to 1982, claimant performed personal services for decedent including preparing two meals a day, washing and mending his clothes and cleaning his house. Further, there was testimony that he told others that claimant would be well taken care of.

In support of its general denial, setoff and counterclaim the estate presented evidence that decedent performed many valuable services for claimant over the years. He substantially remodeled her living room, bathroom and dining room, provided her transportation, gave her financial advice and assisted her in her financial affairs. The estate also presented evidence challenging claimant's assertion that she provided household cleaning services for the decedent. In addition, testimony was elicited that decedent had promised to take care of his ex-wife and that he would leave money to St. Luke's Hospital because they had saved his life. The rejected handwritten will leaving the bulk of his estate to the claimant was introduced into evidence but when claimant attempted to testify, the estate's objection on the basis of the Dead Man's Statute was sustained.

At the close of claimant's case, the court dismissed Claim D for insufficiency of the evidence. At the close of all the evidence the court entered an order denying claimant's remaining claims as well as the estate's counterclaim. Our scope of review is described in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

---

1. **Section 491.010, RSMo Cum.Supp.1984.** It should be noted that CCS HCS SCS for SB 35 (effective September 28, 1985) modifies current § 491.010 and provides in pertinent part:

\* \* \* \* \* \*

2. In any such suit, proceeding or probate matter, where one of the parties to the ... cause of action ... is dead ..., and the adverse party ... testifies with respect thereto, then any relevant statement ... made by a deceased party ... shall not be excluded as hearsay, provided that in trials before a jury [trial judge is to determine whether declarant would have been competent and whether statements would have been admissible].

3. The provisions of this section shall apply to all trials commenced after the effective date of this act.

We apply the version of § 491.010 extant at the time of the contested hearing in this case and determine that a waiver of the statute had occurred. We are not called upon to decide the case under the new statute and, to the extent that the two versions conflict, although we are not deciding that question either, the claimant's testimony would be admissible.

■ Claimant first asserts that the trial court erred in ignoring the presumption of law that where no family relationship exists and valuable services are performed by one party for another, there is an implied promise by the recipient to pay the reasonable value for such services. Apparently, she contends she is entitled to judgment on her quantum meruit claim as a matter of law. We do not agree.

■ It is well settled that where a family relationship does not exist, the law presumes an intent to pay for services rendered. *Jaycox v. Brune*, 434 S.W.2d 539 (Mo.1968); *Steva v. Steva*, 332 S.W.2d 924 (Mo.1960). Once a claimant establishes that services of the character here were performed, the estate bears the burden of proof that they were rendered gratuitously, *Morris v. Retz*, 413 S.W.2d 544, 548–49 (Mo.App.1967); *Lauf v. Wiegersen*, 17 S.W.2d 369, 371 (Mo.App.1929) and the estate conceded at the hearing that no family relationship existed.

■ Nevertheless, as between strangers the mere rendition of services will not in every instance entitle one to compensation therefor. *Hyde v. Honiter*, 175 Mo.App. 583, 158 S.W. 83, 87 (Mo.App.1913). If their personal relationship was such as to have led a reasonable person to believe that the services were rendered gratuitously, it will be presumed that payment therefore was not intended regardless of their value. *Taylor v. Currie's Estate*, 83 S.W.2d 194, 197 (Mo.App.1935). In *Taylor*, claimant appealed from a verdict for the estate on his claim for services rendered. Currie and Taylor had been closely associated in business for more than 40 years, each extending favors and services to the other. The court acknowledged the general rule that where no family relationship exists, the law presumes an intent to pay for services rendered and no family relationship existed between them. Instead, they were "bound together by the closest ties of friendship and personal esteem." 83 S.W.2d at 197. The court continued:

> The evidence points abundantly to the fact that the services in question were rendered by reason of Taylor's friendship for Currie, and in the course of intimate relations of many years throughout which the one friend consistently and unsparingly endeavored to advance the interests and fortunes of the other. Under such circumstances people do not ordinarily expect pay for any services they may perform, and so it is that the law, which truly reflects the ordinary concept of proper human relations, presumes that services of such character are rendered voluntarily and gratuitously, and casts the burden of proving otherwise upon him who asserts to the contrary.

83 S.W.2d at 197.

The estate's evidence was designed to show that the decedent was a careful man in his financial affairs who promptly paid his bills and would never have received such services without paying for them. That he never mentioned to anyone that he owed money to the claimant for services rendered and in fact, decedent performed valuable services in exchange for the services she rendered. In essence, the estate argued she had been paid, *see Poppa v. Poppa*, 364 S.W.2d 52 (Mo.App.1962) (brothers traded help on each other's farms), or alternatively that the estate's claim against the claimant for decedent's services offset any claim she might have.

■ Similarly, claimant asserts the trial court ignored statements made by decedent establishing an implied agreement to pay for the services rendered and also testimony that claimant "would be taken care of." Claimant argues the court failed to properly consider the rejected handwritten will which was introduced into evidence. However, the weight to be given such testimony was for the trier of fact and this record does not entitle claimant to judgment as a matter of law.

Finally claimant argues the trial court erred in not finding there had been a waiver of the Dead Man's Statute by the estate's filing a setoff and counterclaim and the presentation of evidence in support thereof and that, because of such waiver,

the court erred in not permitting the claimant to testify. We find merit to this contention.

The Dead Man's Act has, for the purpose here, two functional parts. First, in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, the "transactions proviso" renders a surviving party incompetent as a witness in his own favor or in favor of one claiming under him. In this connection the witness is incompetent only as to those matters about which decedent could have testified had he lived. Secondly, where one of the parties to a contract is deceased, and an executor or an administrator is a party to a suit involving such a contract, the portion of the statute referred to as the "administration proviso" makes the surviving party to the contract totally incompetent as a witness except as to matters occurring after probate of the will or appointment of an administrator. *Flanagan v. DeLapp*, 533 S.W.2d 592, 597 (Mo. banc 1976).

The administratrix objected to claimant testifying on the basis of both the transactions proviso and the administration proviso. The objection was sustained.

A party protected by the Dead Man's Act may, by his affirmative act, waive incompetency of the other party as a witness. *Prentzler v. Schneider*, 411 S.W.2d 135, 142 (Mo. banc 1966). In *Saupe v. Kertz*, 523 S.W.2d 826 (Mo. banc 1975), the Court was confronted with the issue of waiver of the Dead Man's Act by the filing of a counterclaim. In *Saupe*, the plaintiff sued the administrator for personal injuries sustained in an automobile collision with an automobile driven by administrator's decedent. The administrator counterclaimed for the wrongful death of the decedent. The counterclaim was dismissed *prior* to trial because the administrator could not maintain such action when, as there, "the deceased [was] a childless unmarried minor who left parents surviving him. Section 537.080." On appeal, plaintiff contended the estate waived his incompetency by filing the counterclaim and relied on *Bruce v.*

*Ullery*, 58 Cal.2d 702, 25 Cal.Rptr. 841, 375 P.2d 833 (1962), which held that when an administrator introduces evidence in support of his counterclaim against the survivor he waives the incompetency protection of the Dead Man's Act. In *Saupe* the court distinguished *Bruce v. Ullery* on two grounds. First, the counterclaim in *Saupe* was dismissed before trial and in any event the administrator was without authority to recover for the wrongful death of his decedent. The Court concluded that in those circumstances there was no waiver of the protection of the Dead Man's Statute.

In the case at bar, the estate filed its responsive pleading denying all allegations of plaintiff's claims as well as its setoff and counterclaim. The estate presented extensive evidence in support of all issues raised by the pleadings at the hearing.

The estate makes much of the fact that the counterclaim went only to events arising after the decedent's death. However, the estate's cause of action was both a setoff for the estate's claim for the value of the decedent's services performed during the years decedent and claimant knew each other as well as a counterclaim for the return of personal property. A defendant who pleads a setoff occupies substantially the position of a plaintiff and must have a subsisting demand which would afford the subject matter for a cause of action. *Barber v. Baker*, 70 Mo.App. 680 (Mo.App.1897). A setoff or counterclaim has the nature and effect of an independent action by the defendant against the plaintiff. *Standard Insulation and Window Co. v. Dorrell*, 309 S.W.2d 701, 704 (Mo.App.1958). Setoff is generally founded on a liquidated debt and used to discharge or reduce plaintiff's claim by an opposite claim arising from a transaction extrinsic to the plaintiff's cause of action. *Edmonds v. Stratton*, 457 S.W.2d 228, 232 (Mo.App.1970).

We have concluded that by filing a setoff and counterclaim and presenting extensive evidence in support of its claims the estate waived the protection of

the Dead Man's Act. The Dead Man's Act was intended to serve merely as a shield not as a sword for attack. A waiver once made cannot be limited and is deemed made for all purposes in the proceeding. *In re Trautmann's Estate,* 300 Mo. 314, 254 S.W. 286, 288 (1923). Plaintiff should no longer have been deemed incompetent to testify.

The cause is reversed and remanded for further proceedings not inconsistent with this opinion.

HIGGINS, C.J., and BILLINGS and BLACKMAR, JJ., concur.

DONNELLY, J., dissents.

WELLIVER, J., dissents in separate opinion filed.

ALMON H. MAUS, Special Judge, dissents in separate opinion filed.

ROBERTSON, J., not participating because not a member of the Court when cause was submitted.

WELLIVER, Judge, dissenting.

I respectfully dissent. Respondent only could have waived the applicability of the Dead Man's Statute by introducing evidence of a transaction with the decedent. *See generally Prentzler v. Schneider,* 411 S.W.2d 135, 141–42 (Mo. banc 1966); *Lampe v. Franklin American Trust Co.,* 339 Mo. 361, 96 S.W.2d 710 (1936). In *Saupe v. Kertz,* 523 S.W.2d 826 (Mo. banc 1975), the Court held that the filing of a counterclaim without the affirmative introduction of evidence does not waive the protection of the Dead Man's Statute. *Id.* at 831.

I would affirm the judgment.

ALMON H. MAUS, Special Judge, dissenting.

I must respectfully dissent.

It has been the general rule that an executor or administrator does not remove the barrier of the Dead Man's Statute by prosecuting to a conclusion a cause of action of his decedent. *Flanagan v. De-Lapp,* 533 S.W.2d 592 (Mo. banc 1976);

*Estate of Rogers v. Courier,* 429 S.W.2d 258 (Mo.1968); *Crockett v. Morelock,* 608 S.W.2d 530 (Mo.App.1980). This has been true whether the cause of action was presented by petition, *Edwards v. Durham,* 346 S.W.2d 90 (Mo.1961), or counterclaim, *Bildner v. Giacoma,* 522 S.W.2d 83 (Mo.App.1975). The testimony of Theresa Buchweiser was not demonstrated to be admissible under any exception, such as those delineated in *DeMott v. Dillingham,* 512 S.W.2d 918 (Mo.App.1974) and *Flanagan v. DeLapp,* supra. Following *Bildner* and *Flanagan,* I would affirm the judgment of the trial court.