Francis B. FARNSWORTH, As Personal Representative of the Estate of Dorothy Mary Gaunt, Deceased, Respondent,

v.

Gerald and Evelyn Sue FARNSWORTH, Appellants.

No. WD 37848.

Missouri Court of Appeals, Western District.

Dec. 16, 1986.

Bradley H. Lockenvitz, Linn, for appellants.

Dale C. Doerhoff, Cook, Vetter and Doerhoff, Jefferson City, for respondent.

Before CLARK, C.J., and DIXON and NUGENT, JJ.

CLARK, Chief Judge.

The dispute in this case is between respondent, the personal representative of the estate of Dorothy Gaunt, deceased, and appellants, the beneficiaries of an inter vivos trust created by the deceased some two months before her death. Respondent had judgment after a jury trial for recovery from appellants of the value of the trust assets and the trust beneficiaries appeal. The issues in the case were the mental competency of Dorothy Gaunt and the exercise of influence upon her by appellants to procure the bequests.

Dorothy Gaunt died September 10, 1983, at the age of 71. Both her husband and their only child predeceased her as did two of her brothers. The heirs at law who survived were respondent, Dorothy's brother, and a nephew and two nieces, the children of a deceased brother. Appellants are not related to Dorothy, Gerald being a stepson of a deceased brother and Evelyn being Gerald's wife.

Between March, 1983, and the date of her death, Dorothy was alternately in a Jefferson City hospital and a nursing home as her physical condition declined. Appellant, Evelyn Sue Farnsworth, contacted an attorney during this period and requested that he visit Dorothy and discuss estate arrangements. The attorney did so and eventually prepared a trust agreement and a will, both of which were signed by Dorothy while she was a patient at the nursing home on July 26, 1983. In practical effect, the trust agreement and the will left all of Dorothy's assets to appellants less a $5,000 bequest to respondent and eight $100 bequests to nieces and nephews.[1]

As of the date the trust was created, it was funded by a transfer to appellants as trustees of Dorothy's residence, bank accounts, a money market certificate, a life insurance policy and an automobile. Appellants subsequently accounted to the court for disposition of the trust assets following Dorothy's death. Assets not consisting of cash were sold and appellants realized from all trust assets the total sum of $122,909.50. Of this amount, the sum of $12,848.57 was spent for Dorothy's care and the entire balance of $110,060.93 was disposed of by appellants for their personal use and benefit.

---

1. The trust instrument and the will are inconsistent in that the trust was declared to terminate on the death of the settlor, but the will designated the trust as primary beneficiary. Apparently, the will was drawn from a form applicable to a trust which survives the death of the settlor and was unsuited to the language of Dorothy's trust. The mismatch is of no consequence here because the distribution provisions of the trust on Dorothy's death and the alternate beneficiaries named in the will result in the same distribution of the estate assets.

The jury found the issues in the case in favor of respondent and against appellants on instructions that the verdict was to be for respondent if the jury found either that Dorothy was not of sound and disposing mind and memory at the time she signed the trust agreement, or that the trust agreement was signed as a result of undue influence of Evelyn. Because appellants had disposed of all property realized in consequence of the trust, the court entered judgment against them for $110,060.93 and interest from April 19, 1984, the date of respondent's appointment as personal representative.

## I.

In the first point of error asserted, appellants contend the trial court should not have submitted this case to a jury because a suit to set aside an inter vivos trust is an action in equity and "no jury instructions * * * can adequately advise a jury of all the propositions of law that need to be considered before ruling can be rendered." The argument appears to be that the various factors which affect a decision in a case of this type are so numerous and the principles of law so complex that an adequate verdict directing instruction cannot be drawn. Appellants cite no case authority to support the proposition that a party is not entitled to a jury in a suit to set aside a conveyance on grounds of mental competency or undue influence.

■ The answer to appellants' contention is found in § 473.340.2, RSMo.Cum. Supp.1984, where it is expressly provided that in a discovery of assets proceeding, any party may demand a jury trial. Such a demand was made by respondent thereby invoking the provision of the statute with which the court was bound to comply.[2]

---

**2.** We note, parenthetically, that this case was heard by Associate Circuit Judge Duggins without certification and reassignment pursuant to § 517.520, RSMo.1978. The probate division of a circuit court served by an associate circuit judge has jurisdiction over all probate matters. Section 478.225, RSMo.1978. In a discovery of assets proceeding, the Missouri Rules of Civil Procedure apply. Section 473.340.2 RSMo.

■ Appellants' brief also appears to argue that the jury instructions which were given were deficient, but the particulars of any error are not stated and the instructions about which complaint is made are not set out in the brief as required by Rule 84.04(e). If the point could be construed to include any claim of instruction error, we decline to consider it because of a lack of specificity, the absence of any citation of authority and the failure to observe the rules. *Peck v. Jadwin,* 704 S.W.2d 708, 712 (Mo.App.1986).

## II.

The second point of alleged error contends the evidence was insufficient to support the verdict in that the evidence which was offered did not show a lack of Dorothy's mental capacity or the exercise of undue influence by Evelyn at the time the trust document and will were executed.

■ The point of insufficiency of the evidence has not been preserved for appellate review. According to the record on appeal, appellants filed no motion for a directed verdict at the close of respondent's evidence or at the close of all the evidence. The proper and prescribed way to preserve the question of submissibility is to file a motion for directed verdict at the close of the evidence and to assign as error in the after trial motion the failure of the trial court to have directed a verdict. *Millar v. Berg,* 316 S.W.2d 499, 502 (Mo.1958). A failure by a defendant to move for a directed verdict at the close of plaintiff's case or at the close of all the evidence waives his contention that plaintiff failed to make a submissible case. *Grindstaff v. Tygett,* 655 S.W.2d 70, 75 (Mo.App.1983).

Rule 84.13(c) permits this court to consider plain errors affecting substantial rights, even though the error has not been pre-

---

Cum.Supp.1984. Although the probate judge may certify a discovery of assets case to the presiding judge of the circuit for reassignment when a jury is demanded, the use of the word "may" in the statute indicates the associate circuit judge is not required to do so. *Pfefer v. Bd. of Police Comm'rs,* 654 S.W.2d 124, 128 (Mo. App.1983).

served. If a plaintiff has not made a submissible case, the resulting verdict may be, but not necessarily will be, a manifest injustice. *Schubiner v. Oppenheimer Industries, Inc.*, 675 S.W.2d 63, 70 (Mo.App. 1984). On this account, the point is taken up in this case, but under the limitations imposed on plain error review.

The evidence presented on the issues of Dorothy's mental incapacity and the exercise of undue influence by appellants is as follows, stated in the light most favorable to respondent, the prevailing party. *Smith v. Allied Supermarkets, Inc.*, 524 S.W.2d 848, 849 (Mo. banc 1975); *Routh v. Burlington Northern R.R.*, 708 S.W.2d 211, 213 (Mo.App.1986).

Dorothy had been a school teacher and lived with her husband, Walter, in the St. Louis area. Walter died in 1980 and Dorothy lived alone after that. In January of 1983, Dorothy was found lying on the kitchen floor of her home, unable to arise. She was taken to a hospital and was institutionalized thereafter at various times in hospitals and otherwise in nursing homes until her death

On March 15, 1983, Dorothy was admitted to St. Mary's Health Center in Jefferson City, a hospital, where she was treated until April 22, 1983, for osteoarthritis, reactive depression, chronic lung disease, heart failure, a hiatal hernia and duodenal ulcer. She went from the hospital to a nursing home where she remained until she was readmitted to the hospital on June 29, 1983. During this second period of hospitalization, Dorothy was frequently confused and was resistant to normal bowel and bladder hygiene, a symptom of the loss of mental capacity. She did not know the time, the day or date and was unaware that she was in a hospital and did not have any abstract thought power. The diagnosis was senile dementia of Alzheimer's type. The condition is progressive and proved to be so in Dorothy's case.

Dorothy was released from St. Mary's July 14, 1983, with a diagnosis of senile dementia, cardiac arrhythmia and arteriosclerotic heart disease and was returned to the nursing home. During this period of residence at the nursing home, it was noted by Linda Menshel, a licensed practical nurse, that Dorothy's condition was markedly different from what it had been before. Dorothy was confused, disoriented and incoherent. A loss of brain function through an actual loss of nerve cells in the brain is associated with senile dementia, the extent being dependent on the severity and progress of the illness. On August 25, 1983, Dorothy suffered a stroke and she was returned to the hospital. She was diagnosed as having experienced multiple cerebrovascular accidents which left her severely incapacitated. The condition ultimately led to her death September 10, 1983.

While Dorothy was in the nursing home after her second hospitalization and before her final admission prior to her death, appellant Evelyn Farnsworth contacted an attorney for the purpose of having him confer with Dorothy about her estate. The attorney had not previously represented Dorothy, did not know her and was not summoned by her. The attorney went to the nursing home in the company of Evelyn who remained during the conference between Dorothy and the attorney. Although the attorney would have preferred meeting privately with Dorothy, he did not ask Evelyn to leave and she did not volunteer to do so. The attorney was not informed that Dorothy was suffering from senile dementia. Had the attorney been so advised, he would have consulted Dorothy's doctor before preparing the documents.

The trust agreement and will were prepared and later, another attorney from the same law office took them to the nursing home to obtain Dorothy's signature. Evelyn again accompanied the attorney and remained in the room while the contents of the documents were explained to Dorothy and her signatures were obtained. The second attorney had never seen Dorothy before and was not told about Dorothy's mental condition or the fact that she was suffering from senile dementia. The attorney testified that had she been given the facts about Dorothy's medical history and diagnosis, she would have been concerned

and would have wanted to make some investigation of her own.

Before the trust and will were signed, appellants had not been particular favorites of Dorothy and had never received any special gifts from her. Evelyn had previously attempted to obtain a power of attorney, but Dorothy had refused to give it to her.

The mental capacity sufficient to support the making of an inter vivos gift is the same as that required to make a will. *Flynn v. Union National Bank of Springfield*, 378 S.W.2d 1, 6 (Mo.App.1964). The requirements for testamentary capacity are that the testator be of sound mind, understand the ordinary affairs of life, know the nature and extent of his property and the persons who are the natural objects of his bounty and appreciate his natural obligation to those persons. *Cockrum v. Cockrum*, 550 S.W.2d 202, 205 (Mo.App. 1977). Sickness, old age and mere eccentricities are not in themselves sufficient to overthrow a will on grounds of mental incapacity, but each may be taken into consideration with other facts in determining if the testator had the mental capacity to make a will. *Shearrer v. Shearrer*, 259 S.W.2d 705, 719 (Mo.App.1953). Evidence of circumstances prior to and closely approaching the time of the execution of the will and shortly subsequent thereto which tend to shed light on the question of testamentary incapacity is competent and it is not required that proof of testamentary incapacity at the very moment the will was executed be made by eyewitnesses. *Schoenhoff v. Haering*, 327 Mo. 837, 38 S.W.2d 1011, 1015 (1931).

Undue influence in law is such overpersuasion, force, coercion or deception as substitutes the will of another for that of a testator, grantor or donor. *Michaelson v. Wolf*, 364 Mo. 356, 261 S.W.2d 918, 925 (1953). The exercise of undue influence is usually shown by circumstantial evidence, that is, facts and circumstances from which it may reasonably be inferred that the fiduciary was active in some way which caused or assisted in causing the execution of the instrument. While mere presence or opportunity to influence or a suspicion of undue influence is not sufficient, and the undue influence must operate at the time to invalidate a transaction, the presence of the beneficiary or even exertion of his influence at the exact moment of execution need not be shown. *Godsy v. Godsy*, 504 S.W.2d 209, 213 (Mo.App.1973). Factors given careful consideration in determining whether a deed should be cancelled on the ground of undue influence include the extreme age of the grantor, his impaired physical condition, his mental debility, not necessarily amounting to complete incompetency, and the absence of competent and bona fide independent advice. *Drake v. Greener*, 523 S.W.2d 601, 606 (Mo.App. 1975). Mental capacity and undue influence are somewhat intertwined. Both involve a state of mind and for that reason, feebleness and infirmity of intellect are facts to be considered in whether or not undue influence exists. *Flynn v. Union National Bank of Springfield, supra* at 11.

The evidence in the present case was sufficient to submit both issues of incompetency and undue influence to the jury and to support the verdict rendered. According to the medical evidence, Dorothy suffered mental impairment of a severe nature commencing at least thirty days prior to the execution of the will and trust. The primary cause was a physiological cerebral disruption which became progressively worse. She was unaware of her surroundings, suffered from delusions and did not know the date, day or time. Appellants were not the natural objects of her bounty and the gift to them of virtually all of Dorothy's property to the exclusion of her family was an unusual and inherently suspicious transaction. The arrangements for the gifts to appellants were entirely negotiated by Evelyn who superintended the transaction from the point of securing legal services which Dorothy had not requested to the execution of the instruments. It was well within the proof to infer that the conditions of incompetency and undue influence were operative at the time the will and trust agreement were signed. At a minimum, it is abundantly

clear that appellants have not shown the verdict to represent a manifest injustice or a miscarriage of justice as required for reversal under Rule 84.13(c). Appellants' Point II is denied.

### III.

In a final point, appellants contend the court erred in refusing to permit appellants to testify regarding their dealings with Dorothy which culminated in the execution of the trust agreement and will. They concede that the so called "Dead Man's Statute" would otherwise apply to seal their lips, but they say respondent waived the statute by commencing this action and by presenting evidence. Appellants rely primarily on *Buchweiser v. Estate of Laberer*, 695 S.W.2d 125 (Mo. banc 1985).

The Dead Man's Statute includes two witness disqualification provisos, the transaction disqualification and the administration disqualification. The transactional proviso renders the surviving party to a contract incompetent as a witness only as to those matters about which the decedent could have testified had he lived. The administration proviso applies only in cases where the personal representative is a party to the suit. In that circumstance, the surviving party to the contract is totally incompetent as a witness except as to matters occurring after appointment of the personal representative. Section 491.010, RSMo.Cum.Supp.1984 (Amended § 491.010, RSMo.Supp.1985). A party who is protected by the Dead Man's Statute may waive the incompetency of the other party. *Prentzler v. Schneider*, 411 S.W.2d 135, 141–42 (Mo. banc 1966). The mere prosecution of a cause of action by the personal representative on behalf of the deceased does not waive the statute. *Flanagan v. DeLapp*, 533 S.W.2d 592 (Mo. banc 1976). Waiver occurs where the protected party introduces in some manner the testimony of his adversary as where the adversary's deposition is taken, *Baker v. Baker*, 363 Mo. 318, 251 S.W.2d 31 (1952), where interrogatories are propounded and answered, *Friend v. Morrow*, 558 S.W.2d 780 (Mo. App.1977) or where the subject is opened by cross-examination of the adversary.

*Matter of Kunzler's Estate*, 548 S.W.2d 212 (Mo.App.1977), appeal after remand *Kunzler v. Kunzler's Estate*, 598 S.W.2d 139 (Mo. banc 1980).

In the present case, respondent did not waive the statute because respondent did not offer any testimony of appellants and promptly objected when appellants themselves undertook to testify about the circumstance of their association with Dorothy leading up to the execution of the trust agreement and will. Under the administration proviso of the statute, appellants as the surviving parties were totally incompetent as witnesses.

The case of *Buchweiser v. Estate of Laberer, supra,* is distinguishable. The issues in *Buchweiser* involved compensation claimed for services rendered to the decedent and services rendered and gifts made by the decedent for which the estate claimed recovery by way of offset. The opinion held the estate to have waived the incompetency of Buchweiser, the claimant, when it introduced testimony in support of its counterclaim dealing with the transactions between the two. The subjects of claim and counterclaim were in fact part of the interrelated transactions between the deceased and Buchweiser to the end that they were part of a single transaction. The estate sought to prove that nothing was owed to Buchweiser because she had already been paid. The case stands for the proposition that when one is entitled to the shield of the statute as a defense against a claim, the same statute may not be used to silence the other party's evidence when the protected party asserts a counterclaim.

The present case is the typical situation in which a personal representative asserts a claim on behalf of the decedent as part of the personal representative's legal obligation to recover assets for the estate. Absent a waiver of the Dead Man's Statute on the part of the estate by one or more of the affirmative acts described above, the adversary is not a competent witness to testify about the transaction on his own behalf. This is the essence of the administration proviso and has long been the law

as exemplified by the authorities cited here and those named in the dissenting opinions in *Buchweiser*. The majority opinion in *Buchweiser* did not declare these previous decisions to be overruled and we therefore conclude that the *Buchweiser* doctrine is applicable only to cases involving the same or similar fact situations of an affirmative counterclaim defense of setoff. The trial court correctly denied appellants offer of testimony.

Respondent has moved to dismiss the appeal on the ground that appellants' brief is not in compliance with the rules in its statement of facts. The statement is indeed deficient but we have exercised our discretion to consider the case on the merits and therefore overrule the motion.

The judgment is affirmed.

All concur.