In the ESTATE OF Gerald V. JOHNSON, Deceased, Appellant,

v.

Leona LAMBURTH, Respondent.

No. 50496.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 9, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 8, 1986.

Application to Transfer Denied Nov. 18, 1986.

J.B. Schnapp, Daniel P. Fall, Schnapp, Graham & Reid, Fredericktown, for appellant.

John W. Briscoe, Glen A. Norton, Briscoe and Henderson, New London, for respondent.

SIMON, Judge.

Appellant, the Estate of Gerald V. Johnson, appeals from a judgment entered in the Circuit Court of Lincoln County. The case was tried by the court. Respondent, Leona Lamburth, was awarded $12,530 against appellant on her claim for services rendered to the decedent, Gerald V. Johnson, prior to his death. Appellant's counterclaim for the return of certain personal property in the possession of respondent along with a claim for services per-

formed for respondent by decedent was denied.

On appeal, appellant argues: (1) the trial court erred in finding that respondent was entitled to compensation for services because the uncontroverted evidence established that said services were performed gratuitously; (2) the *Murphy v. Carron, 536 S.W.2d 30* (Mo. banc 1976) standard of review should not apply in the instant case because of alleged errors by the trial court on evidentiary matters; and (3) the trial court erred in finding that respondent was entitled to items of personal property from the estate. Judgment is affirmed in part, and reversed and remanded in part.

Decedent died intestate. J.R. Johnson, decedent's brother, was appointed personal administrator of the estate. The evidence at trial showed that respondent met decedent during the summer of 1980 while on holiday at Timberlake, near Elsberry, Missouri. It was not until January, 1981, however, that the relationship between respondent and decedent began. At that time, respondent lived in St. Louis, Missouri and decedent resided in Elsberry.

During early 1981 decedent underwent prostate surgery. Decedent requested respondent to look after his greenhouse and plants while he was in the hospital. Respondent did so. After decedent's operation, he requested that respondent help him at Elsberry. Between the time of decedent's surgery and the 6th of June, 1981, respondent travelled to Elsberry every weekend to do the decedent's laundry and to cook for him.

On or about June 15, 1981, respondent retired from her job as a school bus driver and moved to her own house in Elsberry. Respondent then provided decedent services on a daily basis at his Elsberry home. Respondent testified that she prepared meals, did laundry, worked decedent's garden, canned various produce grown in the garden, helped decedent with his part-time job as a meter reader, and provided general housekeeping services. She also testified that although she spent most of her time with decedent, she never spent the night at his home and that they were not lovers. Respondent testified further that she paid her own bills and did not rely on decedent for food, shelter, or clothing.

In 1983, the Mississippi River flooded decedent's clubhouse at Timberlake, Lincoln County, Missouri. Respondent testified that she helped repair the house. She shoveled mud from the basement, replaced concrete blocks, and repainted.

The respondent and decedent went on two vacations together while decedent was alive; one to Texas and one to Florida. On each of these trips, respondent and decedent contributed an equal amount of money for expenses, and upon return to Elsberry, divided the remainder evenly.

Respondent alleges that she intended to be compensated for her services. Respondent testified that decedent indicated to her that she would be compensated for all the work she was doing. Dorothy Young, a member of the Elsberry community who had known decedent approximately 15 years, testified that decedent told her that respondent would be compensated for her efforts. Young also testified that respondent had said that she thought she was going to be paid for her work. Ida Brown, another member of the Elsberry community and a friend of both decedent and respondent, testified that decedent had told her "don't worry about [respondent], she'll be taken care of. I'll take care of [respondent] for the rest of her life."

Appellant's evidence attempted to show that there was a "family" or "peculiarly" intimate relationship between decedent and respondent and that, therefore, said services were performed gratuitously by respondent with no intention of being compensated. Appellant's evidence tended to show that decedent and respondent slept together, that they were lovers, and that they were contemplating marriage.

After the decedent's death, Delmore Johnson, decedent's brother, and other heirs of decedent gave a microwave oven, a turntable, cookware, and a cookbook to re-

spondent. The trial court found that these items were "her own personal property."

In its first point, appellant maintains that the trial court erred in awarding respondent a money judgment for services rendered because the uncontroverted evidence established that they were performed gratuitously without an intention to be compensated therefor.

At the outset, we emphasize that our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *See Buchweiser v. Estate of Laberer*, 695 S.W.2d 125, 127 (Mo. banc 1985). The judgment of a trial court will be sustained provided there is substantial evidence to support it, it is not against the weight of the evidence, and it does not erroneously apply or declare the law. *Murphy*, 536 S.W.2d at 32.

■ We find appellant's first point devoid of merit. Substantial evidence was presented to support a finding that respondent's services were valuable and were performed with expectation of payment and that decedent intended to pay therefor. Dorothy Young and Ida Brown, two independent witnesses, testified to that effect. Certainly the evidence that tended to show that respondent's services were rendered ex gratia was controverted. Respondent vigorously denied her services were gratuitous.

■ In support of its first point appellant further contends that the law has been erroneously applied. Appellant concedes that the law presumes that a decedent intends to pay one who provides him services when no family relationship exists between the provider and the decedent. Yaycox v. Brune, 434 S.W.2d 539, 544 (Mo.1968). Appellant maintains, however, that "family relationship" is not the only exception to the presumption. This is true. As between strangers, the mere rendition of services does not automatically entitle one to compensation therefor. If a personal relationship between unrelated persons is such as to lead a reasonable person to believe that the services were rendered gratuitously, it is then presumed that payment there-

for was not intended regardless of their value. *Buchweiser*, 695 S.W.2d at 128 (*citing Taylor v. Currie's Estate*, 83 S.W.2d 194, 197 (Mo.App.1935)).

■ Appellant argues that because the trial court did not consider whether respondent's services were performed gratuitously, but only considered whether a family relationship existed between respondent and decedent, the law has been misapplied. Such an argument is specious. The trial court, in its detailed Findings of Fact and Conclusions of Law, specifically found that respondent did perform many valuable services for the decedent. The court further found that "[d]ecedent indicated to one independent witness that he would pay for [respondent's] services." The finding of an intention to pay necessarily rules out that the services would not be paid for because they were gratuitous. That the trial court did not specifically find and state that the services were not gratuitous is of no consequence. Under the evidence presented, the trial judge could have reasonably found no gratuity.

In point number two, appellant entreats this court to ignore the mandate of our Supreme Court and review the facts of this case de novo. We decline. Appellant argues that the standard of review detailed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), should not apply to the case sub judice because of alleged errors by the trial court on evidentiary matters.

■ Our Supreme Court, in *Buchweiser*, 695 S.W.2d 125, emphasized that the standard of review in a case where a claim for services is made on a decedent's estate is *Murphy v. Carron*. *Id*. at 127. We will not ignore this precedent merely because evidentiary errors may have occurred. Appellant misapprehends the appropriate review in a court tried case. We do not review the facts de novo, but review the record and make the determination whether or not the judgment is supported by substantial competent evidence. Naturally, if the evidence is not competent, it cannot form the basis for the judgment.

■ In a court tried case, the party seeking reversal should convince the appellate

court that the trial court's judgment had insufficient competent evidence supporting it. Conflicts in the evidence are for the trial court to resolve, and the facts must be taken in the light most favorable to the result reached by the trial court. The trial court, when sitting as the trier of fact, may believe all, part or none of the testimony of any witness. *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 483 (Mo. banc 1980).

In the instant case there is ample competent evidence to support the trial court's judgment. Respondent's and her witnesses' testimony constitutes substantial and competent evidence. It is enough to support the judgment. While appellant may also have introduced substantial evidence through its witnesses that would justify a finding in its favor, the trial court did not err. Under *Murphy v. Carron*, we conclude that appellant's second point must fail.

Appellant's third point is that the trial court erred in finding that respondent was entitled to certain items of personal property belonging to the estate. We agree.

The trial court found that "Delmore Johnson and other heirs gave to claimant, after decedent's death, a Sears microwave oven, turntable, cookware, and cookbook, which items are still in claimant's possession and which items are her own personal property."

Respondent testified that the microwave, the turntable and cookbook were all purchased by the decedent for himself and that she had made a gift of the cookware to decedent. No evidence was adduced that the aforementioned items were respondent's personal property. We conclude that these items were personalty belonging to the estate.

Respondent contends that there is no provision contained in the Missouri Statute Books that prohibits a personal representative and all the heirs-at-law, of one who dies intestate, from giving away small items of personal property belonging to the estate.

The facts do not support respondent's contention. In the instant case, no finding was made that the personal representative of the estate and heir, J.R. Johnson, was present and agreed to the distribution. Indeed, J.R. Johnson testified that the only items that respondent asked for were a clock, an electric meat slicer, and some life jackets. He made no mention of the microwave or its accessories. The trial court found that Delmore Johnson and other heirs made the distribution. The record does not show that all heirs were present and agreed to make the distribution. Pursuant to §§ 473.260 and 473.263, et seq., RSMo 1978, the administrator shall take possession of all personal property of the decedent, except exempt property, and administer it in accordance with the probate code. Under the facts of the instant case, we find that the distribution was invalid.

Affirmed in part, and reversed and remanded in part for further proceedings consistent with this opinion.

KAROHL, P.J., and GARY M. GAERTNER, J., concur.