Cathrine J. HARBERDING, Appellant,

v.

**MERCANTILE TRUST COMPANY, N.A., Respondent.**

No. 51743.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 30, 1987.

John L. Sullivan, St. Louis, for appellant.

Stephen Joseph Cassin, St. Louis, for respondent.

SIMON, Judge.

Appellant, Cathrine J. Harberding, appeals a decree of the Circuit Court of the City of St. Louis denying her action in equity for a mandatory injunction directing respondent, Mercantile Trust Company, N.A., to issue its certificate of error stating that three ten thousand dollar ($10,000) face value United States Treasury Notes were erroneously issued in the sole name of decedent, Helen F. Harberding, and should have been issued in the joint names of Helen F. and Cathrine J. Harberding.

Appellant contends that the trial court erred in: (1) making specific findings of fact which lacked evidentiary support; and (2) excluding certain testimony relating to statements made by the decedent. We affirm.

Pursuant to the parties' stipulation and the evidence adduced at trial, appellant was the daughter-in-law of decedent, Helen F. Harberding at all material times. Appellant and decedent maintained a close relationship which spanned forty years. After decedent suffered a stroke, appellant wrote most of decedent's checks and paid decedent's bills.

On May 5, 1981, decedent opened a bond investment account in the names of "Helen F. Harberding or Cathrine J. Harberding" at Mercantile Trust Company, and placed an order for $30,000 par value of United States Treasury Notes. The notes were issued in bearer form with coupons with a maturity date of May 15, 1984. Decedent made an initial deposit of $1500 on the $29,978.30 purchase price. The balance was subsequently paid on May 15, 1981 by a check drawn on a joint account held with appellant at Mercantile.

In addition to the bond investment account and the checking account, appellant and decedent also held in joint name with right of survivorship a savings account and several certificates of deposit through the Mercantile Trust Company. However, all the money represented in these accounts were the funds of decedent.

On May 8, 1984 decedent appeared at Mercantile Trust Company and requested that the balance from the Treasury Notes purchased on May 15, 1981 be rolled over into a new issue of Treasury Notes of the

same par value of $30,000. Fred Ridder, a representative of Mercantile Trust Company, who had handled the 1981 transaction, prepared a customer order reflecting that the ordered Treasury Notes be registered in the sole name of decedent. A printed confirmation to that effect was furnished to decedent. There was a $30.60 difference in the cost of the recently issued Treasury Notes and the value of the matured Treasury Notes, which was charged against the joint checking account of appellant and decedent. Decedent died intestate on December 24, 1984.

During the trial, Cheryl Grassi, an assistant vice president in the Bond Investment Department, testified, by stipulation of counsel, as an expert witness regarding bond department procedure on bond investment. She testified that after a customer places an order for Treasury Notes, a customer confirmation is sent to the customer, indicating in what form the Treasury Notes will be delivered. A second confirmation form is then sent when the balance on the Treasury Notes is paid. If the notes are to be registered as were the ones in this case, a third confirmation form is sent when the securities are received from the Federal Reserve. After the securities are received, notification is sent and the customer comes in to pick up the securities. At that time, the customer is able to review the issue, the rate, the maturity date, the par amount, and the registration on the security. All in all, a customer has access to four confirmation forms.

In addition, appellant made the following offer of proof after a sustained hearsay objection concerning certain telephone conversations she had with decedent:

Q. Mrs. Harberding, what did Helen Harberding tell you at the time that you wrote down the number of the bonds? What did she say?

A. She told me not to worry about going to the bank. I don't have to sign anything. The man told her it wasn't necessary....

. . . . .

Q. At any time with regard to the '84 or '81 transaction, did she ever mention anything to you as to how the security registered or whose name it bore?

A. She thought it was—she thought it was in both our names, that I would— that there was no problem.

. . . . .

Q. What did she say that you can now testify that that's what she thought? What did she say?

A. She said, "It's all yours, and no one in this world who I want to have anything but you, you're my only person I have."

Subsequent to the hearing, the trial court made extensive findings of fact based upon the evidence adduced at the hearing and stipulation filed and concluded that the [appellant] failed to carry her burden of proof. Accordingly, the trial court denied appellant's request for a mandatory injunction.

Initially, we note that appellant, in her second point, contends that the trial court erred in excluding as hearsay the testimony contained in her offer of proof. Appellant stated that these conversations evinced decedent's intent that the Treasury Notes were to be issued in joint names without the necessity of appellant's signature, and that such statements of intent contemporaneously uttered with a transaction are an exception to the hearsay rule on which ground the trial court excluded the testimony. In support of this argument, appellant states that the testimony falls within the hearsay exceptions of: (1) declarations manifesting a present state of mind or intent, and (2) declarations against interest.

The standard of review to be applied in a court-tried case is that "the decree or judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with a caution and with a firm belief that the decree or judgment is wrong." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); Rule 73.01. Weigh-

ing the evidence is for the trial judge when it sits as a fact-finder, *Stratton v. Stratton,* 694 S.W.2d 510, 512 (Mo.App.1985), and the exclusion or admission of evidence in a court-tried case is seldom reversible error. *See Mattingly v. Bruckerhoff,* 603 S.W.2d 11, 13–14 (Mo.App.1980).

Assuming arguendo that the excluded testimony was admissible, there would exist at most a conflict in the evidence, and such conflicts are to be resolved in a light most favorable to the result reached by the trial court. *Estate of Johnson v. Lamburth,* 719 S.W.2d 55, 59 (Mo.App.1986). A thorough examination of the record reveals that there is substantial evidence supporting the trial court's judgment. By appellant's own stipulation, a printed confirmation reflecting that the 1984 Treasury Notes were registered in decedent's sole name was furnished to decedent. At no time from the ordering of the 1984 Treasury Notes until decedent's death seven months later in December, 1984 were the notes registered in any other form than in decedent's sole name. Furthermore, Cheryl Grassi, an expert witness regarding bond department procedure, testified that a customer purchasing registered notes has access to four confirmation forms. Viewing the foregoing evidence and its reasonable inferences therefrom in the light most favorable to the trial court's decision, we conclude that there was substantial evidence to support the trial court's judgment. "So long as there is credible evidence on which the trial court can formulate its beliefs, the appellate court may not substitute its judgment to reach a different result." *In re Marriage of Bruske,* 656 S.W.2d 288, 294 (Mo.App.1983). Thus, our finding of substantial evidence supporting the trial court's judgment mandates an affirmance, in the absence of an erroneous declaration or application of the law.

Judgment affirmed.

GARY M. GAERTNER, P.J., and STEPHAN, J., concur.