In the ESTATE OF James L.
WILSON, Deceased.

Sandra HERRINGTON, Personal
Representative, Respondent,

v.

Mary KILGORE, a/k/a Mary
Wilson, Appellant.

No. 52551.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Nov. 24, 1987.

Dennis E. McIntosh, Farmington, for appellant.

Charles W. Medley, Farmington, for respondent.

CRIST, Judge.

Mary Kilgore appeals the trial court's ruling on a Petition for Discovery of Assets. Sandra Herrington brought the action as personal representative for the Estate of James L. Wilson (Estate). Mary also appeals the denial of her claim against Estate for services rendered to James L. Wilson. We affirm as modified.

Mary and James began living together in 1970. At the same time, they began holding themselves out as husband and wife, and Mary began to use the name Mary Wilson. At this time James was married, and that marriage was not dissolved until 1972 or 1973. Mary and James' relationship was never solemnized by a marriage ceremony. In 1983 James became ill and died while he and Mary were in Colorado on business. During the approximately thirteen years James and Mary were together, they tried their hands at several business ventures, purchased several vehicles and a mobile home, and jointly obligated themselves on several notes.

After James' death, Mary, as his widow, filed an Application for Letters of Refusal. The application was granted, and on July 27, 1983, the court issued its order Refusing Letters for Spouse. Shortly thereafter, on January 25, 1984, Sandra Herrington was appointed personal representative for the Estate of James L. Wilson. On February 28, 1984, the court vacated the order by which it granted Mary the Letters of Refusal.

Estate filed a Petition for Discovery of Assets on March 21, 1984, in which it asserted Mary had concealed or disposed of assets belonging to James' estate. These

assets included: one Ford pickup truck valued at $9,000, one travel trailer valued at $3,800, one mobile home valued at $15,000, enumerated furnishings from the trailer valued at $4,440, family photographs valued at $500, tools valued at $400, clothing valued at $250, a one-half interest in antiques valued at $10,000, a one-half interest in an Arkansas bank account of unknown value, a one-half interest in undescribed property in Arkansas of unknown value, and a one-half interest in an undescribed Canadian bank account of unknown value.

Mary's answer to the petition was a general denial and a prayer that her claim against the estate for $30,239.71, filed April 5, 1984, be construed as a counterclaim or setoff.

The Petition for Discovery of Assets and Mary's claim against Estate were tried together by the court. Estate's evidence consisted of reading part of Mary's deposition and eleven exhibits including vehicle titles, security agreements and tax returns. Mary testified in her defense and provided the court with eight more exhibits. The evidence on Mary's claim against Estate consisted of her testimony, the testimony of James' sister and five more exhibits. Based upon this evidence the court dealt with both the claim and the counterclaim.

The court found Mary and James were tenants in common with equal shares in the mobile home, the antiques, and the travel trailer which the court found Mary had sold for $3,800. As to the Ford pickup truck, the court found James was the sole owner and the pickup had a value of $9,000, subject to certain indebtedness; Mary had possession and use of the pickup from the time of James' death, and the rental value was $1,900; and Mary had made payments on the pickup since James' death. The court also found Mary had paid funeral expenses arising from James' death. The court calculated the funeral expenses and payments on the pickup came to $3,792. Thus, the court found the $3,800 derived from the sale of the commonly held travel trailer was used for funeral expenses and to make the payments on the pickup.

By the court's order the pickup was transferred to Estate; Mary was entitled to a credit of $1,900 from the sale of the travel trailer but that credit was offset by the $1,900 rental of the pickup; Estate was granted a one-half interest in the mobile home representing an equity of $750; and Estate was awarded $1,250 in cash representing one-half the value of the antiques. The court denied Mary's claim as far as it pertained to services rendered James during his lifetime. On all issues not specifically dealt with the court found against the party asserting the claim. The result of the order was that Estate received the pickup, $1,250, and a $750 interest in the mobile home. Mary retained the mobile home, its contents, the antiques, as well as any bank accounts or other property she and James may have had.

On appeal, Mary raises five assertions of error. She claims the trial court erred in finding all the property was held in a tenancy in common and not in a joint tenancy with right of survivorship. Mary, in her second point relied on, asserts that even if we affirm the finding of a tenancy in common the court erred in its division of the property because it did not divide the property in proportion to their contributions. Her third claim is the pickup titled solely in James' name should also be considered jointly held property. Mary's fourth point relied on deals with that part of the court's order offsetting the use of the pickup. Lastly, Mary appeals the denial of her claim for services asserting "an implied contract [for compensation] exists in a marriage and the Wilson's believed themselves married." We will address the points in the order raised.

Several of Mary's allegations of error are based on the premise the trial court's order was not in accord with her testimony. In a court-tried case the credibility of witnesses is for the trial court and the court may believe all, part, or none of the testimony of any witness. *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 483 [4] (Mo. banc 1980); *Estate of Johnson v. Lamburth*, 719 S.W.2d 55, 59 [6] (Mo.App. 1986). We accept as true only those facts

which support the result reached by the trial court. *Trenton Trust Co.*, 599 S.W.2d at 483 [3]. And, we affirm unless there is no substantial evidence to support the judgment, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 483 [1].

■ The application for title for the travel trailer and the certificate of title for the mobile home both indicate ownership by Mary "and/or" James Wilson. As Mary states in her brief, the use of "and/or" does not automatically create a joint tenancy. *See e.g. Estate of Plummer v. Fritsch*, 706 S.W.2d 573, 575 [1] (Mo.App.1986) ("A or B, payable to either" does not create a joint tenancy in a bank account); *Melton v. Ensley*, 421 S.W.2d 44, 51 [4] (Mo.App. 1967) (the use of "and," "or" or "and/or" does not per se indicate the type of tenancy in a bank account). Mary argues their intent should control. *Melton*, 421 S.W.2d at 52 [11]. Mary testified she and James considered themselves married. She claims this belief is evidence of their intent to hold their property as joint tenants with right of survivorship and not as tenants in common.

■ Property held by nonmarried persons as a married couple is held in a tenancy in common unless a joint tenancy is proved by evidence other than the fact the property was erroneously titled as if they were married. *Anderson v. Stacker*, 317 S.W.2d 417, 421 [3] (Mo.1958); *Keller v. Porchey*, 560 S.W.2d 257, 258 [1] (Mo.App. 1977). The only evidence that a joint tenancy was intended was Mary's testimony. She testified they put both names on the vehicle titles and co-signed the loans because they intended a joint tenancy with right of survivorship. The trial court assessed her testimony and determined a joint tenancy did not exist. The trial court did not err in finding Mary and James were tenants in common in the travel trailer, mobile home, and antique collection. Point I is denied.

■ Finding a tenancy in common, we now turn to the trial court's determination that Mary and James each had an undivided one-half interest in the property. We have held in the past there is no presump-

tion that tenants in common hold equal shares. *Brooks v. Kunz*, 597 S.W.2d 183, 187 [4] (Mo.App.1980) on remand 637 S.W. 2d 135 (Mo.App.1982). In so holding, we noted a rebuttable presumption of equal shares was "supported by logic and fairness." *Id.* We now go further and state the law of Missouri should be changed to conform with logic and fairness. Evidence of each tenant's contribution is often unobtainable and cannot be reconstructed over time, under such a circumstance any division other than even is unfair.

■ Fortunately we are not faced with that problem in this case. Mary testified she and James worked together in a succession of business ventures including a bar in Michigan; a medical bone business in Arkansas; a sporting equipment sales venture in Arkansas; a pig farm in Missouri; and in selling antiques, a business they ran out of their mobile home in Missouri. It could be deduced from Mary's testimony that the initial capital for these businesses came from a hotel Mary owned in Michigan; however, there was no evidence tracing any funds or establishing a greater initial contribution by Mary. Similarly, Mary refers to "money from Canada" and money from the sale of other property but there was no evidence, other than her testimony, as to the source of these funds or their amounts. The trial court did not err in disbelieving Mary's testimony that she contributed more than James while believing her testimony that they worked side by side in many business ventures, and inferring therefrom that Mary and James contributed equally to their commonly held property. Mary's second point is denied.

■ Unlike the travel trailer and the mobile home, the Ford pickup was titled only in James' name. The title is prima facie evidence of ownership. *Landshire Food Service, Inc. v. Coghill*, 709 S.W.2d 509, 512 [9] (Mo.App.1986); *Dee v. Sutter*, 222 S.W.2d 541, 543 [4] (Mo.App.1949). Mary bears the burden in overcoming the presumption of sole ownership created by the title. *Dee*, 222 S.W.2d at 543 [4]. She did not do this to the satisfaction of the

trial court. Mary's evidence that a car titled in both names was traded in for the pickup does not prove she shared in the ownership of the pickup. The evidence does not rebut the finding there had been a gift to James, especially in light of Mary's testimony the car had been bought for James. We find no error in the trial court's assessment of the ownership of the truck. Similarly, we find no error in the court's assessment of the value of the pickup where the value assigned by the court was the same as the amount Mary gave in her Application for Refusal of Letters.

■ Mary's fourth point is more difficult because it evidences a misunderstanding of the court order. She alleges:

The trial court erred in offsetting the travel trailer and the funeral and medical expenses paid by Mary Wilson as rent for use of the Ford pickup truck after James Wilson's death because Mary Wilson had an ownership interest in the truck in that she was a joint tenant and such relief was not requested.

The court order states:

That at the time of Decedent's death, Decedent James Wilson and Mary Kilgore owned as tenants in common a ... travel trailer, ... and that each owned a one-half undivided interest therein. That following Decedent's death, Mary Kilgore purporting to be the widow of Decedent, sold and transferred said travel trailer for a consideration of $3,800.00. The Court further finds that Mary Kilgore paid funeral expenses and payments on the pick-up truck totaling $3,792.00 and that Mary Kilgore is entitled to a refund of $1,900.00 on the sale of the travel trailer, but that the use of the truck since the date of death would offset this amount.

As stated above, we read this to mean the money from the sale of the travel trailer was expended on reimbursable expenses and since Mary owned a one-half interest in the travel trailer she was entitled to $1,900 from its sale. This entitlement, however, was offset by the amount the court determined was rent for the pickup. Thus, we will treat this point as alleging the court

erred in awarding respondent the rental value of Mary's use of the pickup when that relief was not requested, and in its determination of the value of the rent when no evidence was presented on that issue. We have already dealt with her argument there was a joint tenancy in the pickup and decided there was none.

The trial court properly determined the truck was the sole property of James and now of Estate. Since she did not have any interest in the pickup, Mary had no right to use it without compensating the owner. Mary, however, argues compensation was not requested and should not have been granted. The third paragraph of respondent's Petition to Discover Assets states: "Mary Kilgore had damaged the [pickup] truck. . . ." The petition does not mention rental value. Even if we were to construe the request for damages to be one for rent, there was no evidence as to the fair rental value of the pickup. We reverse the court's order offsetting Mary's share of the proceeds from the sale of the travel trailer.

■ Mary's last argument is she should have been compensated for caring for James on the theory "an implied contract exists in a marriage and the Wilsons believed themselves married." Her argument works against her. If she had cared for him incident to a lawful marriage, then the presumption would have been that the services were gratuitous, while only if there had been no relationship would there have been the presumption of an intent to pay for services. *Buchweiser v. Estate of Laberer,* 695 S.W.2d 125, 128 (Mo. banc 1985); *Estate of Johnson,* 719 S.W.2d at 58 [2]. There was no marriage but her testimony described a close personal relationship such that reasonable people would believe the services were rendered gratuitously. *Estate of Johnson,* 719 S.W.2d at 58 [2].

The trial court was in a position to judge Mary's credibility. Estate did not request rent for the use of the pickup truck and that award is reversed. The evidence supports the remaining findings and orders of the trial court.

The court's order is modified so that Mary is entitled to $1,900 from the sale of the travel trailer. This money offsets all but $100 of the $2,000 due Estate for its interest in the mobile home and in the antiques. Accordingly, Estate is entitled to the pickup and $100 from Mary; Mary is entitled to the mobile home, its contents, and the antiques.

Judgment affirmed as modified.

SATZ, C.J., and DOWD, J., concur.