STANDARD INSULATION AND WINDOW COMPANY, Appellant,

v.

Robert L. DORRELL, Respondent.

No. 22646.

Kansas City Court of Appeals.

Missouri.

Jan. 6, 1958.

Reed O. Gentry, Robert L. Shirkey, Rogers, Field, Gentry & Jackson, Kansas City, for appellant.

Allan M. Fisher, Felix B. Winston, Kansas City, for respondent.

MAUGHMER, Commissioner.

Is the defendant-maker of a promissory note legally entitled to recover under his counterclaim, from the plaintiff-assignee after maturity, an overpayment made to the original payee-assignor?

For a time prior to September 1, 1952, the defendant Robert L. Dorrell had been employed as sales manager for the Standard Awning Company, Kansas City, Missouri, a partnership composed of Charles Miller (father), Faye E. Miller (mother), and Boyd A. Miller (son). Insulation of buildings and the manufacture of awnings and storm windows was their principal business. On September 1, 1952, the organization was incorporated as the Standard Insulation and Window Company, which corporation is the plaintiff-appellant in this case. The company assets were valued at $45,000. It was contemplated that one-third of the corporate stock (1500 shares—par value $10) would be issued to each of the partners. However, on September 1, 1952, defendant purchased the shares of Faye E. Miller at an agreed price of $15,000. The evidence is undisputed that on this date defendant had commissions due him amounting to $2814.93. He was credited with this amount on the purchase price and executed his promissory note dated September 1, 1952, for the balance in the principal sum of $12,185.07, payable to Faye E. Miller. This note pro-

vided for interest at the rate of 5 percent, with one-fifth of the total principal due September 1, 1953, and a like amount annually thereafter until paid. The note recites that defendant's 1500 shares of stock had been assigned to Faye E. Miller, the payee, as collateral, and provided further that if default occurred, then she was authorized to sell the stock at public or private sale and credit the amount received on the note. The stock certificate itself was introduced in evidence. It was dated December 16, 1952, and assigned on the same day by defendant to Faye E. Miller "as collateral security". All parties agree that on November 16, 1953, defendant paid $1,600, and on March 15, 1954, paid $400 on this note and indebtedness. The chief factual controversy below was whether or not defendant was entitled to have a second credit for the $2814.07. Defendant asserted it was agreed this amount was to be twice credited. Plaintiff company, by its president, Boyd A. Miller, denied any such agreement. A receipt was received in evidence dated December 31, 1952, and signed "Faye E. Miller, by Charles E. Miller", acknowledging receipt of a check issued by the company to defendant in the sum of $2814.93, which was endorsed to Faye E. Miller as "part payment on 1,500 shares of stock". Defendant testified it was their agreement and that it was written on the lower part of the note that he was to make *no payments* except out of corporate profits. He said this proviso written on the note had been "cut off". The note itself was a typewritten document and that part of the paper below the signature was sheared off. On June 17, 1954, defendant tendered his resignation, and shortly thereafter severed all active connections with the company. Defendant defaulted as to the September 1, 1953 and September 1, 1954 payments. The note itself shows an undated "without recourse" endorsement by the payee Faye E. Miller to plaintiff corporation. Boyd A. Miller, president of the plaintiff company, testified that the transfer of the note was made after August 31, 1954, when an appraisal was made to determine the value of the stock. Defendant offered no evidence as to a different transfer date. After defendant's withdrawal, plaintiff employed an accountant to compute the net worth of the corporation. His computation determined the net worth on August 31, 1954, to be $33,697.61. Defendant's stock, a one-third share, by this measurement, had a value of $11,232.53. It appears that after this appraisal, Mrs. Miller, the payee, sold the stock to plaintiff corporation for $11,232.53, credited this amount on defendant's note and then endorsed the note to plaintiff. Mrs. Miller, the payee, was authorized by the terms of the note itself to sell the stock in case óf default and defendant makes no objection to this procedure or to the amount of credit therefrom.

Thereafter other business disagreements between plaintiff and defendant arose. One had to do with a company automobile to which defendant had taken title. There was another promissory note and an account for merchandise defendant had bought. The parties apparently being unable to adjust their differences, plaintiff filed suit. Its petition was in five counts. On Counts 2, 3, 4, and 5, plaintiff had the verdicts totalling $6,921.87. The verdict was against plaintiff under Count 1 of its petition, this being a suit for $224.58, the alleged balance due on the promissory note. The verdict and judgment was for defendant under his counterclaim to Count 1, alleging overpayment and in the sum of $3,341.30. This amount was deducted from the aggregate verdicts for plaintiff under the other four counts, and a general judgment entered for plaintiff for the difference—that is, $3,580.57. Plaintiff has appealed from the item in the judgment for defendant on the counterclaim. That issue is the only one before us for review.

Plaintiff in its brief says the judgment for the defendant on the counterclaim should be reversed for three reasons: (1) Plaintiff's motion for a directed verdict should have been sustained "because the assignee of a promissory note is not le-

gally liable for overpayment of the note by the maker to the assignor". (2) Instruction No. 9 authorized the jury to find that defendant had overpaid plaintiff, and there was no evidence that defendant had overpaid plaintiff, and (3) the instruction erroneously authorized the jury to assess 6 percent interest without any finding that a demand for the overpayment had been made.

The promissory note involved in this litigation was transferred to plaintiff after August 31, 1954. It was apparent upon the face of the instrument that the payment due September 1, 1953, was overdue. Plaintiff, therefore, was not a holder in due course. Sec. 401.052, V.A.M.S. Section 401.058, V.A.M.S. provides: "In the hands of any holder other than the holder in due course, a negotiable instrument is subject to the same defenses as if it was nonnegotiable * * *". We note that this statute declares the "negotiable instrument" (and not the assignee) is subject to the same defenses.

Since defendant received the verdict and judgment on plaintiff's petition and since that judgment has become final it follows that defendant has recovered under his counterclaim or set-off to the extent of plaintiff's claim and to the extent of the promissory note itself. Is he entitled under this counterclaim to recover from plaintiff-assignee the overpayment made to the payee-assignor? In other words, does an assignee, after maturity of a promissory note, become an underwriter or insurer, and is he liable for all valid claims which the maker may have against the assignor arising from the transaction, or is his liability limited to loss of the negotiable instrument itself?

Formerly our courts attempted to distinguish between a "set-off" and a "counterclaim". Generally, the first was restricted to defense—by it a defendant could lessen or eliminate plaintiff's claim, but could not offensively recover in excess of plaintiff's demand. But under a counterclaim defendant might secure a judgment against plaintiff for such excess if his claim was truly against plaintiff, rather than just against plaintiff's cause of action. Recently, however, the terms have been used almost interchangeably and applied as the facts warrant, rather than as the name suggests. A "counterclaim" is a counter demand existing in favor of defendant against plaintiff and includes both set-off and recoupment. Fricke v. W. E. Fuetterer Battery & Supplies Co., 220 Mo.App. 623, 288 S.W. 1000. A counterclaim is required to be in favor of defendant and against plaintiff. Wanstrath v. Kapel, 354 Mo. 565, 190 S.W.2d 241–243.

"A set-off counterclaim, plea in reconvention, or statutory recoupment has the nature, characteristics, and effect of an independent action or suit by defendant against plaintiff * * *". 80 C. J.S. Set-Off and Counterclaim § 1, page 4. At 80 C.J.S. Set-Off and Counterclaim § 61 e, page 121, we find this statement: "It is well settled that in an action by an assignee, a claim in favor of defendant against the assignor can be allowed as a set-off, counterclaim, or reconvention only to the extent of the claim sued on, and judgment cannot be rendered against the assignee for the excess. Defendant is entitled to use his claim defensively, and not offensively * * *".

In its brief plaintiff has cited two opinions written a long, long time ago and from outstate jurisdictions. Since those decisions are in point we quote from them. In Norton v. Foster, 12 Kan 44, loc. cit. 48 [Reprint page 43, loc. cit. 45], the Kansas Supreme Court said: "The payor of a promissory note, who may have a counterclaim or set-off against the payee of the note, is not deprived of the benefit of his counterclaim or set-off by an assignment of the note after maturity. On the contrary, he is entitled to have one demand

satisfy the other up to the amount of the smaller demand; but he is not entitled to have an affirmative judgment returned in his favor, and against the assignee, for any excess of his demand over and above the amount of the promissory note".

In Scher v. Grifka, 199 N.Y.S. 31, the Supreme Court of New York said: "The trial judge having found there was a rescission of the contract by defendant upon nonperformance by plaintiff's assignor, the chattels belonged to plaintiff, and the complaint should have been dismissed. But as plaintiff is an assignee, upon defendant's counterclaim for moneys paid on the furniture, no money judgment should have been awarded in favor of defendant".

In State v. Weatherby, 344 Mo. 848, 129 S.W.2d 887, loc. cit. 893, our Supreme Court used this language in speaking of a defendant's set-off or counterclaim: "The technical issue involves a defendant's common law right of recoupment; a purely defensive matter growing out of the transaction constituting a plaintiff's cause of action, available only to reduce or satisfy a plaintiff's claim and permitting of no affirmative judgment for defendant".

The ruling and comments by the St. Louis Court of Appeals in Fricke v. W. E. Fuetterer Battery & Supplies Co., 220 Mo.App. 623, 288 S.W. 1000, loc. cit. 1002, supra, are also in point. There the court, after a lengthy discussion as to the shaded meanings of counterclaims, counter demands and set-offs, concludes: "Of course, in either case, the counter demand, though it exceed the plaintiff's demand, may be used simply as a set-off —that is, merely as a means of extinguishing the plaintiff's demand". And on page 1003 of 288 S.W.: "Of course, the defendant is not entitled to plead his counterclaim as such against the assignee. He may plead it only as a defense to defeat recovery of a judgment by the assignee or to reduce the amount

of his recovery, and the defendant so pleads it in this case".

Our Springfield Court of Appeals in Moore v. Black, 275 S.W. 549, loc cit. 550, reached the same conclusion: "Some question has been raised as to whether this pleading is a counterclaim, or is to be regarded as a set-off. Since the final trial was between an assignee of the party, who was the original owner of the account sued upon, it is clear that no judgment over could be rendered in favor of defendant against the assignee, but his right went no further than to permit him to set-off against the present plaintiff enough of his claim against the Interstate Grocer Company to extinguish the claim of the present plaintiff".

■ It seems evident that defendant's claim of payment and overpayment is truly a defense to the negotiable instument itself rather than a claim against plaintiff, in whose hands the note came to rest. The cases point and reason leads us to that conclusion. Defendant-maker, by his counterclaim, resisted and completely overcame liability under the negotiable instrument. He has no further valid claim against the plaintiff-assignee. Instruction No. 9 directed that "if you find said promissory note has been overpaid by defendant, then you should find your verdict in favor of defendant and against plaintiff in such sum as you find has been overpaid by defendant to the plaintiff * * *". We believe there was no evidence of overpayment to plaintiff corporation, and that it was not liable for any overpayment made to Mrs. Miller, the payee. This being true, Instruction No. 9 was erroneously given and the motion for a directed verdict as to defendant's counterclaim should have been sustained. What we have said means a reversal of this case. It is, therefore, unnecessary to discuss plaintiff's other assignment of error.

The judgment is reversed. The cause is remanded with directions to vacate the

item in the judgment entered for defendant under his counterclaim and enter judgment for plaintiff in the sum of $6,921.87.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court. All concur.