In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

 J&M SECURITIES, LLC, ) No. ED109593
 )
 Appellant, ) Appeal from the Circuit Court of
 ) St. Louis County
 vs. )
 ) Honorable John R. Lasater
 NIKKI M. KENNEDY, )
 )
 Respondent. ) Filed: December 28, 2021

 I. Introduction

 J&M Securities (“Appellant” or “J&M”), as assignee of The Century Group, Inc.

(“Century”), filed suit against Nikki Kennedy (“Kennedy”) in the Circuit Court of St. Louis

County to recover certain amounts allegedly owed to it pursuant to the residential lease

agreement entered into by and between Century and Kennedy, which agreement Century had

assigned to J&M for collection purposes only. In her answer to the Petition, Kennedy generally

denied any liability to Century, and asserted a counterclaim for breach of the warranty of

habitability, failure to return her security deposit, and set-off; Kennedy also asserted a similar

affirmative defense of set-off. Although the circuit court found that Kennedy owed certain

amounts to J&M for terminating the lease early, the circuit court also found that J&M owed a

slightly greater amount to Kennedy pursuant to her set-off affirmative defense and counterclaim,

and thus entered a money judgment in favor of Kennedy. J&M appeals the portion of the money
judgment entered against it and in favor of Kennedy, but does not appeal the other parts of the

circuit court’s judgment.

 J&M raises three points on appeal relating to the money judgment entered against it. In

its first point, J&M argues that the circuit court erroneously declared the law in entering a money

judgment against it in that Missouri law does not allow recovery against the assignee of a lease

agreement for a claim of overpayment to the assignor of the lease agreement. In its second point,

J&M argues that the circuit court erroneously applied the law in entering the money judgment

against it for the same reason asserted in its first point. In its third point, J&M argues that the

circuit court’s money judgment against it was not supported by substantial evidence of any

overpayment by Kennedy to J&M or any other transaction with J&M, which J&M maintains is

necessary in order for a money judgment to be entered against an assignee in this situation.

 We reverse and remand.

 II. Factual and Procedural Background

 As Kennedy did not file a brief in connection with this appeal, we only have J&M’s

version of the relevant factual background. Regardless, it appears that the factual background

would be largely undisputed. The following is a summary of the relevant factual and procedural

history in this case based on our review of the record before us:

 On or about October 19, 2018, Century, as landlord, and Kennedy, as tenant, entered into

an ordinary residential lease agreement (the “Lease”) for an apartment located in St. Louis

County (the “Leased Premises”). The Lease commenced on October 19, 2018, and was

scheduled to terminate on October 31, 2019 (the “Termination Date”). The base monthly rent

under the Lease was $605.00 per month, and the Lease called for a security deposit of $400.00,

which Kennedy paid to Century at the commencement of the Lease.

 2
 The Lease also had a provision whereby it would automatically renew at the then-current

market rental rate if Kennedy did not notify Century, in writing, of her intent not to renew the

Lease at least two full calendar months before the Termination Date. This provision also

provided that Century may “withhold all or any portion of the security deposit as compensation

to Lessor for actual damages sustained as result [sic] of Tenant’s failure to give adequate written

notice to terminate tenancy.”

 According to Century, it sent two letters to Kennedy (dated August 1, 2019, and August

22, 2019), which reminded her that the Lease was coming up for renewal, and both letters

specifically requested that she notify them whether she intended to renew her lease no later than

August 31, 2019. The second notice also reminded Kennedy that if she did not notify Century of

her intent to renew or vacate on or before August 31, 2019, the Lease would automatically renew

“for a like term at the current market rate.” However, Kennedy failed to notify Century of her

intent not to renew the Lease by August 31, 2019, and so the Lease automatically renewed,

effective November 1, 2019, at the then-current market rental rate of $620.00 per month.

Century also sent Kennedy a letter, dated September 15, 2019, informing her that the Lease

automatically renewed for another 1-year term on November 1, 2019.

 Despite the Lease automatically renewing for another 1-year term on November 1, 2019,

Kennedy vacated the Leased Premises on or before October 31, 2019. Century withdrew

$605.00 from Kennedy’s account on November 4, 2019, pursuant to an ACH agreement it had

with Kennedy. However, Century did not become aware that Kennedy had vacated the Lease

Premises until shortly thereafter, and conducted a routine inspection on November 7, 2019.

 Century then sent a letter to Kennedy, dated November 11, 2019, summarizing the total

amount due upon her termination of the Lease on October 31, 2019 (the “Inspection Summary”),

 3
which included several components. First, the Inspection Summary included the various charges

Century assessed for damage to the Lease Premises, which totaled $193.00. Next, the Inspection

Summary reflected the following two charges: (a) $620.00 as one month’s rent for “No Notice

Given” to terminate the lease; and (b) $2,170.00 as a contractual charge under Section 28(B)(2)

of the Lease called “Contract Part Performance settlement,” which was 3.5 times the monthly

rental amount (the “CPPS Provision”), and was assessed for terminating the Lease early.

Finally, the Inspection Summary reflected the following two credits to Kennedy: (a) $400.00 for

the security deposit; and (b) $605.00 for the amount it had automatically deducted from

Kennedy’s account on November 4, 2019. Thus, Century claimed a total amount due from

Kennedy of $1,978.00.

 On June 23, 2020, J&M filed suit against Kennedy for breach of the Lease, seeking the

amounts set forth in the Inspection Summary (i.e., $1,978.00), plus pre-judgment interest from

November 12, 2019, plus post-judgment interest at the lesser of 18% or the maximum annual

rate allowed by law, as well as Century’s attorney’s fees and costs (the “Petition”). J&M

specifically alleged that the “present claim” had been assigned to it by Century pursuant to §

425.300 RSMo. (1994) (the “Assignment”), and further alleged that it was “the real party in

interest for purposes of collection.” J&M attached a copy of the Assignment to the Petition as an

exhibit thereto.1

 In her answer to the Petition, Kennedy generally denied any liability to J&M, and

asserted a counterclaim for breach of the warranty of habitability, failure to return her Security

Deposit, and set-off. Specifically, in her set-off claim, Kennedy asked the circuit court to

1
 Although the Assignment specifically references the 1994 version of § 425.300, we note that this statute has not
changed since it was first enacted in 1992, and provides, in pertinent part, as follows: “Collection agencies may take
assignments of claims in their own name as real parties in interest for the purpose of billing and collection and
bringing suit in their own and the claimant’s names thereon….”

 4
subtract her damages caused by Century’s “failure to provide a decent, safe and clean place to

live” from any rent the circuit court determined was unpaid and then-owing, as well as requested

a refund of her $400.00 security deposit and the $605.00 withdrawn from her account. In her

answer, Kennedy also asserted an affirmative defense of set-off on the same basis as the

counterclaim.

 The matter was called for trial on December 15, 2020, at which time J&M presented

evidence in support of its claim against Kennedy. Although Kennedy appeared, pro se, and

briefly cross-examined J&M’s witness, she did not present any evidence in support of her

affirmative defense to the claim in the Petition or in support of her counterclaims against J&M.

At trial, a representative of Century acknowledged that the Leased Premises had been leased to a

new tenant by November 30, 2019, meaning that it was only vacant for the month of November

2019.

 By “Order and Judgment” entered on January 19, 2021 (the “Final Judgment”), the

circuit court entered judgment on the parties’ claims. First, the circuit court found in favor of

J&M on its claim against Kennedy for the amounts requested in the Inspection Summary, except

for the $2,170.00 sought pursuant to the CPPS Provision2, totaling $813.00. Next, the circuit

court found that Century held a security deposit of $400.00, as well as the $605.00 withdrawn

from Kennedy’s account on November 4, 2019, totaling $1,005.00. Finally, the circuit court

found in favor of J&M on Kennedy’s counterclaim for beach of the warranty of habitability and

failure to return the security deposit, finding it was “consumed by the assessment of damages [to

2
 Specifically, the circuit court found that the CPPS Provision constituted a penalty given that Century had charged
Kennedy $605.00 for its actual damages for Kennedy’s failure to provide notice, recognizing that Century could not
recover both its actual damages and liquidated damages for the same injury, citing Paragon Grp., Inc. v. Ampleman,
878 S.W.2d 878, 882 (Mo. App. E.D. 1994).

 5
the Leased Premises] and one month’s rent.”3 Thus, the circuit court found that after the

assessment, Kennedy is entitled to a refund of $192.00 from J&M. Accordingly, the circuit court

ordered and adjudged that Kennedy “shall have and recover from plaintiff, J&M securities, the

amount of $192.00.”

 Although not necessary in order to preserve these issues for appeal (because this was a

court-tried case), J&M nonetheless filed a motion for new trial and a motion to amend the Final

Judgment, both of which essentially argued that the circuit court could not enter a judgment

against it for the amount that Kennedy’s counterclaim for set-off exceeded its own claim against

Kennedy—$192.00. However, by order dated March 1, 2021, the circuit court denied both

motions. In its order, the circuit court noted that J&M complains that the court entered judgment

“dismissing” its contract claim, finding in favor of Kennedy on her counterclaims, and entering

judgment against it for $192.00. In response, the circuit court directed J&M to re-read the Final

Judgment, noting that it found for J&M on its contract claim in the amount of $813.00, but

further noted that because J&M already held $1,005.00 of Kennedy’s funds, Kennedy was

entitled to a refund of $192.00.4 J&M timely filed its notice of appeal, and this appeal followed.

 III. Standard of Review

 Our review of a court-tried case is controlled by the principles of Murphy v. Carron, 536

S.W.2d 30 (Mo. banc 1976). Under Murphy, we will sustain a decree or judgment of a circuit

3
 We note that in several places in its brief, counsel for J&M stated that the circuit court “dismissed” its claim
against Kennedy. However, that was not the case, as the circuit never dismissed J&M’s claim against Kennedy; in
fact, as discussed above, the circuit court found in favor of J&M on its claim against Kennedy, but also found in
favor of Kennedy on her counterclaim against J&M for set-off, and ultimately awarded a judgment of $192.00 in
favor of Kennedy because that was the amount her claim exceeded J&M’s claim against her. Although we do not
believe that counsel for J&M intended any misrepresentation, we nonetheless encourage counsel for J&M to choose
their words more carefully in any future briefing to this Court.
4
 As further discussed below, we note that J&M did not actually hold the $1,005.00 at issue; rather, Century actually
held this amount. Therefore, even though Kennedy could use this fact defensively against J&M’s contract claim
against her, she could not use it offensively to obtain a judgment against J&M for the excess.

 6
court “unless there is no substantial evidence to support it, unless it is against the weight of the

evidence, unless it erroneously declares the law, or unless it erroneously applies the law.” Id. at

32. A claim that a judgment erroneously declares or applies the law involves “review of the

propriety of the trial court’s construction and application of the law.” Pearson v. Koster, 367

S.W.3d 36, 43 (Mo. banc 2012). Therefore, we apply de novo review to questions of law

decided in court-tried cases. Id. Accordingly, we review the trial court’s determination

“independently, without deference to that court’s conclusions.” Id. at 43-44.

 IV. Discussion

 As noted, J&M raises three points on appeal relating to the circuit court’s entry of a

money judgment against it. In its first two points, J&M essentially argues that the circuit court

erroneously applied and declared the law with respect to whether a money judgment can be

entered against it as the assignee of the Lease, for collection purposes only, based on Kennedy’s

overpayment to the assignor of the Lease, Century. In its third point, J&M essentially argues

that the money judgment against it is not supported by substantial evidence. Because J&M’s

first point is dispositive of this appeal, we need not address its second and third points and

decline to do so.

 This case appears to be a matter of first impression in Missouri, and asks us to determine

whether a money judgment can be entered in favor of a tenant and against the assignee of a

landlord, for collection purposes only, involving an ordinary residential lease agreement where

the tenant has made an overpayment to the landlord/assignor, but the tenant has neither made any

payment to nor entered into any transaction with the collection assignee. For the reasons set

forth below, we answer this question in the negative under the facts of this case.

 7
 J&M’s argument in support of its first point primarily relies on a decision of the Western

District of this Court, Standard Insulation & Window Co. v. Dorrell, 309 S.W.2d 701 (Mo. App.

1958), which recognized the following general rule in Missouri: “It is well settled that in an

action by an assignee, a claim in favor of defendant against the assignor can be allowed as a set-

off, counterclaim, or reconvention only to the extent of the claim sued on, and judgment cannot

be rendered against the assignee for the excess.” Id. at 704 (quoting 80 C.J.S. Set-Off and

Counterclaim § 61 e, p. 1215). Dorrell succinctly summarized the foregoing rule as follows:

“Defendant is entitled to use his claim defensively, and not offensively.” Id. (emphasis added).

 In Dorrell, the assignee of a promissory note sued the maker of the note for the balance

due after maturity, among other claims. Id. at 702-03. However, the maker filed a counterclaim

against the assignee for recovery of the overpayment made to the original payee/assignor of the

note. Id. at 703. Although the assignee recovered a total of $6,921.87 on its other claims against

the maker of the note, the verdict was against the assignee on its claim against the maker for the

amount due under the assigned note—$224.58. Id. In addition, the verdict and judgment were

for the maker of the note on its counterclaim against the assignee, which alleged an overpayment

to the original payee/assignor of $3,341.30. Id. Thus, this amount was deducted from the

aggregate verdicts for the assignee of the note under the other counts in the petition, and an

overall judgment was entered against the maker for the difference—$3,580.57. Id. The assignee

thereafter appealed the portion of the judgment whereby the maker’s overpayment to the original

5
 We note that the current version of this C.J.S. provision states as follows: “In an action by an assignee, the
defendant cannot recover an affirmative judgment against the assignee on a claim against the assignor.” 80 C.J.S.
Set-off and Counterclaim § 112 (2021). This provision further states: “In an action by an assignee, a claim in favor
of a defendant against the assignor can be allowed as a set-off, counterclaim, or reconvention only to the extent of
the claim sued on, and judgment cannot by rendered against the assignee for the excess. A defendant is only entitled
to use the claim defensively.” (Internal footnotes and citations omitted).

 8
payee/assignor was deducted from the amounts the assignee otherwise recovered against the

payee. Id.

 The Western District in Dorrell thus framed the dispositive issue as follows: “[D]oes an

assignee, after maturity of a promissory note, become an underwriter or insurer, and is he liable

for all valid claims which the maker may have against the assignor arising from the transaction,

or is his liability limited to loss of the negotiable instrument itself?” Id. at 704. In addressing

this issue, Dorrell proceeded to discuss the difference between a “set-off” and a “counterclaim,”

noting that formerly a “set-off” was generally “restricted to defense—by it a defendant could

lessen or eliminate plaintiff’s claim, but could not offensively recover in excess of plaintiff’s

demand.” Id. On the other hand, under a “counterclaim,” a defendant could “secure a judgment

against plaintiff for such excess if his claim was truly against plaintiff, rather than just against

plaintiff’s cause of action.” Id. However, Dorrell noted that these terms have been used “almost

interchangeably and applied as the facts warrant, rather than as the names suggest.” Id. In this

regard, Dorrell further noted that “a ‘counterclaim’ is a counter demand existing in favor of

defendant against plaintiff and includes both set-off and recoupment.” Id. (citing Fricke v. W. E.

Fuetterer Battery & Supplies Co., 288 S.W. 1000 (Mo. App. 1926)). Furthermore, “[a]

counterclaim is required to be in favor of defendant and against plaintiff.” Id. (citing Wanstrath

v. Kapel, 190 S.W.2d 241, 241-43 (Mo. 1945)).

 In addition to the foregoing general rule, Dorrell further noted that regardless of the

terminology used (i.e., “counterclaims,” “counter demands,” and “set-offs”), even though a

defendant’s “counter demand” may exceed the plaintiff’s demand, it can only be used as a “set-

off,” meaning “merely as a means of extinguishing the plaintiff’s demand.” Id. at 705 (quoting

Fricke, 288 S.W. at 1002). Dorrell then explained that “the defendant is not entitled to plead his

 9
counterclaim as such against the assignee”; rather, he may plead them “only as a defense to

defeat recovery of a judgment by the assignee or to reduce the amount of his recovery….” Id.

(quoting Fricke, 288 S.W. at 1003). Therefore, in ultimately reversing the portion of the

judgment whereby the overall amount of the judgment entered in favor of the assignee was

reduced by the amount of the maker’s counterclaim for an overpayment to the original

payee/assignor (i.e., $3,341.30), Dorrell concluded as follows:

 Some question has been raised as to whether this pleading is a counterclaim, or is
 to be regarded as a set-off. Since the final trial was between an assignee of the
 party, who was the original owner of the account sued upon, it is clear that no
 judgment over could be rendered in favor of defendant against the assignee, but
 his right went no further than to permit him to set-off against the present plaintiff
 enough of his claim against the [assignor of the account] to extinguish the claim
 of the present plaintiff.

Id. (quoting Moore v. Black, 309 S.W.2d 549, 550 (Mo. App. 1925)). Accordingly, the case was

remanded to the circuit court “with directions to vacate the item of judgment entered for

defendant [maker] under his counterclaim and enter judgment for plaintiff [assignee] in the sum

of $6,921.87.” Id. at 705-06.

 Next, although not cited in J&M’s brief, we further note that the Western District of this

Court has more recently recognized the relevant general rule set forth in Dorrell, stating as

follows:

 We note … that a claim for set-off against an assignee … may be used only to
 reduce any recovery to which [the assignee] might be entitled. If it should be
 determined that [the assignee] is entitled to less than [the amount of the
 defendant’s claim], [the defendant] may not be awarded a judgment against [the
 assignee] for the difference due to [the assignee’s] status as an assignee.

E. Atl. Transp. & Mech. Eng’g, Inc. v. Dingman, 727 S.W.2d 418, 423-24 (Mo. App. W.D.

1987) (citing Dorrell, 309 S.W.2d at 705)).6

6
 We acknowledge that although the Western District’s recognition in Dingman of the relevant general rule set forth
in Dorrell was arguably dicta because the court did not directly address that specific issue on appeal (but rather, was

 10
 Furthermore, although not binding on this Court, and although not cited in J&M’s brief,

we find an even more recent case to be generally instructive here. In Steadfast Insurance Co. v.

Arc Steel, LLC, 2017 WL 9807434 (W.D. Mo. Nov. 30, 2017), the U.S. District Court for the

Western District of Missouri recognized the continuing viability of both Dorrell and Dingman in

a commercial construction case. In Steadfast Insurance Co., a general contractor assigned its

claims for delay damages against one of its subcontractors to its insurance company, which then

sued the subcontractor. Id. at *1. In its answer, the subcontractor asserted two related

counterclaims against the assignee insurance company, and prayed for judgments against the

insurance company because it “st[ood] in the place of its insured.” Id. The insurance company

then filed a motion to dismiss the subcontractor’s counterclaims, arguing that they are not

permitted under Missouri law. Id.

 In addressing the insurance company’s motion to dismiss, the District Court summarized

the dispositive issue as follows: “[W]hether Missouri law permits an obligor to assert

counterclaims against an assignee that could have been asserted against the assignor.” Id. at *2.

The District Court then noted that both parties cited Dorrell and Dingman in support of their

respective arguments, but with differing interpretations of the cases. Id. In resolving the vastly

different interpretations of Dorrell and Dingman (as well as Fricke, 288 S.W. at 1000, and

Moore, 275 S.W. at 551), the District Court noted that these cases “make clear that an obligor

may plead a counterclaim so long as it is to be used as an off-set to reduce or extinguish

plaintiff’s demand.” Steadfast Ins. Co., 2017 WL 9807434 at *2. The District Court further

noted that it is a “‘well settled’ principle that a counterclaim may be brought by an obligor to a

limited extent.” Id. at *3 (citing Dorrell, 309 S.W.2d at 704). Specifically, “[a]n obligor cannot,

providing instructions to the circuit court to apply the rule in Dorrell on remand), we nonetheless find Dingman to
be generally instructive in resolving the central issue presented in this appeal, especially in the absence of any
contrary Missouri authority.

 11
however, use the counterclaim to obtain an affirmative judgment,” or stated alternatively, “an

obligor cannot recover in excess from an assignee.” Id.

 Although the District Court in Steadfast Insurance Co. ultimately denied the assignee

insurance company’s motion to dismiss, thus permitting the subcontractor to assert its

counterclaim against the assignee, the lesson of this case is clear: under Dorrell and the other

cases cited by the District Court, although a defendant obligor can indeed assert a counterclaim

against a plaintiff assignee, the counterclaim may only be used to reduce or extinguish the

assignee’s original claim against the obligor, but may not result in a judgment against the

assignee. To reiterate, although only persuasive authority, we nonetheless find Steadfast

Insurance Co. instructive here.

 While the foregoing authorities are more than sufficient to reverse the circuit court’s

judgment as requested by J&M, we also note that the relevant general rule stated in Dorrell

appears to be widely followed in other jurisdictions around the country that have addressed this

specific issue. For example, over seventy years ago the Superior Court of New Jersey succinctly

noted that “[n]o citations are necessary in support of the well settled doctrine, that recovery and

justment [sic] on a counterclaim or setoff against an assignee, where based on a demand against

the assignor, cannot be affirmative; it can be defensive only.” Pargman v. Maguth, 64 A.2d

456, 459 (N.J. Super. Ct. App. Div. 1949) (emphasis added).

 In addition, the Supreme Court of Iowa similarly recognized: “The general rule is that an

obligor may assert against an assignee all claims which he could have asserted against the

assignor. To put it another way, the assignee of a claim takes subject to all defenses, setoffs, and

counterclaims to which his assignor was subject.” Walters v. Iowa-Des Moines Nat’l Bank, 295

N.W.2d 430, 433 (Iowa 1980) (citing Dorrell, 309 S.W.3d at 704, and numerous other cases). In

 12
Walters, the plaintiff, Richard Walters (“Walters”), filed a claim against Iowa-Des Moines

National Bank (“Iowa-Des Moines”). Id. at 432. However, one of the key issues was whether

Walters was required to assert his claim against Iowa-Des Moines as a compulsory counterclaim

against the assignee of a separate, but related, claim that Iowa-Des Moines had against Walters,

which it had been assigned to a third-party, Central National Bank of Des Moines (“Central”).

Id. Central asserted the assigned claim against Walters in a separate action, which resulted in a

judgment against Walters. Id. More to the point, in ultimately holding that Walters was required

to assert his claim against Iowa-Des Moines as a compulsory counterclaim in the prior action

brought by Central, the Walters court also addressed the extent of the relief Walters could have

obtained against Central therein. Id. at 433-34. Specifically, the Walters court noted that

because the amount of Walters’s claim against Iowa-Des Moines ($771,000.00) “substantially

exceed[ed]” the amount of Central’s original assigned claim against him ($155,000.00),

Walters’s counterclaim could have been used “against Central only defensively to reduce the

amount of its claim against Walters.” Id. at 434 (emphasis added). The Walters court further

noted that Walters’s counterclaim could not have resulted in a personal judgment against Central.

Id. (citing Dorrell, 309 S.W.3d at 70, and other cases). Thus, the Walters court concluded that

Walters’s counterclaim “could be established against Central only to the extent of offsetting its

claim against Walters, leaving a substantial amount for which Central could not be held liable.”

Id.7

 Our research reveals several additional cases from many different jurisdictions that have

adopted or recognized the general rule set forth in Dorrell. See, e.g., St. Paul Ins. Companies. v.

Gentry, 340 So.2d 442, 442-43 (Miss. 1976); Bank of Com. of Charlotte, N. C. v. Waters, 56

7
 Although not relevant to this appeal, we note that the Walters court also recognized that the Iowa rules of civil
procedure would have permitted Walters to add Iowa-Des Moines as an additional party to the original action
brought by Central in order to obtain complete relief. 295 N.W.2d at 434.

 13
S.E.2d 350, 353 (S.C. 1949); Litton ABS v. Red-Yellow Cab Co., 411 N.E.2d 808, 810 (Ohio Ct.

App. 1978); First Nat’l Bank of Boson (Int’l) v. Banco Nacional De Cuba, 658 F.2d 895, 902

(2nd Cir. 1981); Marley v. U.S., 423 F.2d 324, 338 (Ct. Cl. 1970); Riverside Park Realty Co. v.

Fed. Deposit Ins. Co., 465 F.Supp. 305, 316 (D. Tenn. 1978).

 Based on the foregoing cases and other relevant authorities discussed, we see no reason

why the general rule stated in Dorrell, which was more recently recognized in Dingman and

applied in Steadfast Insurance Co., should not also be applied to the assignment of an ordinary

residential lease agreement, for collection purposes only, as occurred in this case. Although

Dorrell involved application of this rule to a standard promissory note, we can discern no

material difference between a promissory note and the ordinary residential lease agreement that

was the basis for the claims and counterclaims asserted in this case for purposes of applying the

rule. The same applies to the agreements that were assigned in Dingman and Steadfast

Insurance Co. Thus, because J&M never actually held the excess funds to which the circuit

court found Kennedy was entitled, Kennedy’s counterclaim for set-off could only be used

defensively, but not offensively against J&M. Accordingly, we hold that the circuit court erred in

applying the law by entering judgment in favor of Kennedy and against J&M for $192.00, which

represented the amount that Kennedy’s counterclaim for set-off exceeded the amount of J&M’s

successful breach of contract claim against Kennedy. That said, we see no reason why Kennedy

could not seek that amount from Century directly, subject to applicable statutory limitations

periods and other relevant bars, which we decline to address.

 Point one is granted. As noted, because J&M’s first point is dispositive of this appeal, we

decline to address J&M’s second and third points.

 14
 V. Conclusion

 For the foregoing reasons, the Final Judgment is reversed and remanded to the circuit

court with directions to vacate the portion of the Final Judgment whereby judgment was entered

in favor of Kennedy and against J&M in the amount of $192.00.

 _______________________________
 Kelly C. Broniec, Judge

Kurt S. Odenwald, P.J. and
John P. Torbitzky, J. concur.

 15